THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY v. JOHN C. KINGSCOTT.

No. 12,646. (69 Pac. 184.)

SYLLABUS BY THE COURT.

1. RAILROADS — *Injury of Employee — Duty of Company — Safe Appliances and Inspection.* It is the duty of a railway company to its employees engaged in emptying oil from barrels by the use of compressed air to provide barrels that are reasonably sound and in a safe condition for such use, and also to use due care in inspecting the condition of the barrels before they are filled with oil.

2. ———— *Evidence of Care in Inspection — Usual Practice.*

Evidence that the care used in inspection is that usually exercised by a railway company is not conclusive upon the proposition that due care has been used by the company.

3. ——— *Delegation of Duty to Inspect—Liability of Company.* The duties of inspection and of furnishing its employees safe instrumentalities to carry on its operations devolve upon the company itself, and those who perform these duties for the company represent it, and for their negligence the company is responsible under the rule of the common law.

Error from Wyandotte court of common pleas ; W. G. Holt, judge. Opinion filed June 7, 1902. Affirmed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.
*H. G. Pope,* and *L. F. Bird,* for defendant in error.

The opinion of the court was delivered by

Johnston, J. : This was an action by John C. Kingscott against the Atchison, Topeka & Santa Fe Railway Company to recover damages for personal injuries resulting from the explosion of an oil barrel. Kingscott was employed by the railway company in an oil house at Argentine, and while emptying coal-oil from a barrel into a tank by means of compressed-air pressure the barrel burst, and portions of it struck him upon the face and body, destroyed an eye, and inflicted other severe injuries. In his petition he alleged that the railway company was negligent in furnishing an old and defective barrel; in failing properly to inspect the barrel before it was filled with oil ; in not warning him of the danger of emptying barrels by the dangerous agency of air pressure, and in failing to furnish him with a safe appliance for emptying the barrels. The railway company answered by alleging that the injuries sustained by Kingscott were the result of his own want of care in

emptying the barrels, and were not caused by the neg-
ligence of the company.

In submitting the case to the jury, the court elimi-
nated the question of the negligence of the company
in furnishing an unsafe appliance for emptying oil
barrels and in failing to warn Kingscott of the dan-
ger of using compressed air.  The questions submitted
to the jury were : ''Did the company provide a de-
fective barrel, and did it properly inspect the barrel
so as to ascertain its fitness for the use to which it
was put; was the flow of oil obstructed by burlap or
other foreign substance in the barrel, and was Kings-
cott himself negligent in failing properly to regulate
the flow of oil from the barrel?''.  It appears that oil
was emptied from barrels into the tank by means of
air pressure, the maximum being eighty pounds to
the square inch.  On the pipes by which the reservoir
was attached to the barrel were valves to regulate the
pressure, and on the wall near by was a gauge which
registered the amount of pressure being used.  The
process is to bore a hole in the side of a barrel and
connect it with the tank by means of a rubber tube.
Another hole is bored into the head of the barrel,
which is connected with an air reservoir by a pipe, and
the pressure of the air forces the oil out of the barrel
and into the tank.  In this instance, the plaintiff had
made the connections, and the greater part of the oil
had been emptied out of the barrel by this method
when Kingscott tipped the barrel up so all the oil
might flow out, and immediately the explosion oc-
curred, from which the injuries resulted.  One of the
contentions of the plaintiff was that there were burlap
and other foreign substances in the barrel which ob-
structed the flow of the oil, and when the air pressure
was applied the barrel necessarily burst.  The jury

found that the explosion was not caused by the negligence of Kingscott in turning too much air into the barrel, or in failing properly to regulate the air pressure, but that it was caused by the stoppage of the outlet for the oil and the defective head of the barrel. Among other matters, the jury found that Kingscott was only applying from five to twenty pounds of pressure just prior to the explosion, and that that was sufficient to accomplish the purpose. It was also found that the barrel appeared to be sound and in good order before the explosion occurred, and that its unsoundness could have been discovered by a pressure test. The jury further answered that they could not definitely determine what the obstruction to the outlet was which caused the explosion.

The main contention of the railway company is that the charge of negligence was not sustained by the testimony. It is argued that Kingscott understood the use of compressed air and had large experience in its application; that a gauge was furnished which indicated the amount of pressure, and as he had control of the valves he could regulate the air pressure, and was, therefore, responsible for the excess of pressure which caused the explosion. The trial court having taken from the jury the question of the condition of the compressed-air appliances, the verdict rests only on the negligence of the company in providing a defective and insufficient barrel, and one which contained something which clogged the outlet for oil, and thus caused the explosion and the injury. We think the testimony tends to show negligence of the railway company and that it is sufficient to sustain the verdict. It was an old, second-hand barrel which was provided, but the fact that it had been previously used does not show that it was unfit for further use. There

is proof tending to show that the barrel was unsound, that is, that its head was somewhat decayed and defective, and some of the testimony tends to show that the outlet was obstructed by some foreign substances. As compressed air is a dangerous agency to use in emptying barrels, it was highly important that barrels should be provided to withstand the pressure, and which contained nothing that would obstruct the outflow. According to some of the testimony, an obstruction to the outflow renders the process dangerous where only a few pounds of pressure are used. The maximum pressure in the reservoir was eighty pounds, and although regulated to some extent by the valve, a witness stated that the air quickly equalized when the outflow was clogged, and that soon the pressure in the barrel would be increased until it would be equal to the pressure in the reservoir. Whether the company exercised care suitable to the exigencies of the situation, in testing the sufficiency of the barrels was a proper question for the determination of the jury. In view of the danger arising from a stoppage of the outflow, it would seem to have been the duty of the company, in using old wooden barrels, to examine the inside of them, and see whether they contained anything that would obstruct the flow of oil or air. Testimony was offered by Kingscott but refused by the court to the effect that it is practicable to inspect the inside of barrels, and that brewers do so by putting a light in the barrels, and are thus able to discover whether any foreign substance is in them and to remove it when found. This would seem to be a proper precaution to take where so dangerous an agency as compressed air is used in emptying barrels. The fact that such an inspection may not have been employed by the company, or that it may not be used

among railroad companies, does not prove that the failure to make it is not negligence.   As was said by Justice Brewer in *Missouri Pac. Ry. Co. v. Haley*, 25 Kan. 64, "it may often be the duty of courts to pronounce conduct negligent, and grossly so, although sanctioned by the custom of the road and the rules of the company, and forbidden by no statute."   See, also, *Mo. Pac. Rly. Co. v. Holley*, 30 Kan. 474, 1 Pac. 130 ; *Dougherty v. Rapid Transit Railway*, 128 Mo. 33, 30 S. W. 317 ; *Wabash Railway Co. v. McDaniels*, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605 ; *Carlson v. Wilkeson Coal and Coke Co.*, 19 Wash. 473, 53 Pac. 725 ; *Richmond & Danville R. R. Co. v. Weens*, 97 Ala. 270, 12 South. 186 ; *Martin v. California Cent. Ry. Co.*, 94 Cal. 326, 29 Pac. 645 ; *Railway Co. v. Warner*, 36 S. W. (Tex. Civ. App.) 118.

No error was committed by the court in declining to instruct the jury as to whether the handling of oil was to be regarded as within the hazards peculiar to the operations of a railroad and as to whether the company was responsible to Kingscott for the negligence of a coemployee.   The plaintiff below was not asking for the protection of the fellow-servant act. The duty of inspection and of furnishing safe instrumentalities for its employees devolved upon the company itself, and those who performed those duties represented the company, and for their negligence the company is liable under the rule of the common law. (*A. T. & S. F. Rld. Co. v. Seeley*, 54 Kan. 21, 37 Pac. 104 ; *Walker v. Gillett*, 59 id. 214, 52 Pac. 442.)   The railway company asked for the submission of a number of special questions which were refused.   An examination of the questions submitted and refused shows that the trial court fairly exercised its discretion in this respect, and submitted questions on the material and controlling issues of the case.   Most of

the questions refused were not material, and while some of them could have been given without error, they were not so material as to make their refusal a ground of reversal.     The findings made are supported by sufficient testimony, and appear to sustain the general verdict.

The judgment will be affirmed.

DOSTER, C. J., CUNNINGHAM, ELLIS, JJ., concurring.