HENRY FLIEGE, *Appellee*, v. THE KANSAS CITY WESTERN RAILWAY COMPANY *et al.*, *Appellants*.

No. 16,423.

SYLLABUS BY THE COURT.

1. JOINT WRONGDOERS—*Injury to Employee—Joint and Several Liability.* A manufacturing company sold a machine to a railway company, retaining the title thereto until payment was made, and undertook to furnish a competent engineer to superintend the erection and installation of the machine on the railway company's premises; and the railway company undertook to furnish employees to assist in installing and starting the machine. While the work was in progress an employee of the railway company, acting under the direction of the engineer of the manufacturing company, was negligently injured. *Held,* that the manufacturing company and the railway company were engaged in a joint operation and there was imposed on them the joint duty to use due care toward those employed in the work, and as an employee was injured through the omission or negligent performance of that duty the companies were guilty of a joint tort, upon which arose a joint and several liability to the injured employee.

2. PERSONAL INJURIES — *Contributory Negligence.* Under the facts in the case it is held that the employee was not guilty of contributory negligence in not adopting another and safer method of performing the task assigned to him.

Appeal from Leavenworth district court; JAMES H. GILLPATRICK, judge. Opinion filed March 12, 1910. Affirmed.

*J. E. McFadden,* and *Lathrop, Morrow, Fox & Moore,* for the appellants; *H. L. Alden,* of counsel.

*Pierre R. Porter,* and *Herbert W. Wolcott,* for the appellee; *Samuel Maher,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Henry Fliege against the Kansas City Western Railway Company and the General Electric Company to recover damages for personal injuries alleged to have been negligently inflicted upon him by the two companies. The railway company purchased from the electric company a heavy machine, called a rotary converter, which was to be installed at a station on the railway company's line, and to that end the electric company was to furnish a competent engineer to have charge of the erection and starting of the engine. The electric company sent W. W. Ray to superintend the installation and starting of the machine, and the railway company coöperated in the work and furnished Jeffers, its consulting engineer, Fliege and others of its employees to assist Ray in the work. In the course of installing the machine they were moving a heavy part of it, called the field piece, to its place on a metal bed. Across the metal bed some heavy planks had been placed, upon which the field piece rested while being moved to its place. Ray and Jeffers were on one side of this ponderous machine and Fliege and others upon the opposite side. Jeffers suggested that it was necessary to put another block or wood cushion under the field piece, and Ray directed that it be done. In obedience to the order Fliege procured a scantling and was placing it under the heavy field piece when Ray and Jeffers, who were standing with crowbars on the other side of the machine, without any notice pried the field piece and pushed it over, thereby catching and crushing Fliege's hand before he had time or opportunity to withdraw it.

The reckless action of Ray and Jeffers in shoving this heavy machine over on Fliege when he was underneath and in a position of danger, without warning and without reference to whether he had executed the order and withdrawn to a place of safety, was a clear case of culpable negligence on the part of those who had charge of the work.

It is contended by the companies that Fliege was guilty of contributory negligence in failing to adopt a safer method of putting the block under the machine. There is nothing substantial in this contention. Nothing in the machine itself or its position suggested danger to Fliege. He had a right to assume that it would not be moved until the cushion was placed and he had reached a position of safety, and at least would not be moved without giving him notice. It may be that standing on the other side of the machine they could not see just when Fliege had completed the task, but that fact only made the duty to warn Fliege more obligatory. Any method of putting the timber under the machine was safe enough if the ordinary precautions had been taken. The only peril in the case arose from the action of Ray and Jeffers in shoving the machine over upon Fliege while he was under it without giving him warning and an opportunity to protect himself.

After insisting that the injury was not the result of the negligence of either, each of the appellants contends for itself that Fliege was not its servant and if the injury was negligently inflicted it was the negligence of the other appellant. The railway company contends that under the contract the electric company was to furnish a competent engineer to superintend the installation and erection of the machinery, and in effect to set up the machine and turn it over complete to the railway company. It contends further that Ray did not represent the railway company, was not subject to its orders, and that the employees of the railway

company were turned over to and were in fact working for the electric company. On the other hand, the electric company insists that Ray was not acting as its employee when Fliege was injured; that he had been merely loaned to the railway company to assist in installing the machinery which that company had purchased, and although he remained the general servant of the electric company and was paid by it he was really serving the railway company in doing the work, and that the railway company must answer for his negligence. The attitude of the companies depended upon the contract made in the sale of the machine and their action under it. Some of its provisions are obscure, but, taken together, and in the light of other evidence as to its execution, they show that the erection and installation of the machine was a joint undertaking and that each was responsible for the negligence of the other. The electric company, which sold the machine and retained the title until payment for it should be made, undertook to furnish a competent engineer and help install the machine. This was done for itself and was more than the mere loaning of an employee to the railway company. It agreed to coöperate in the setting up of the machine. The railway company, which had purchased the machine, undertook, among other things, to furnish its employees, who were to assist the electric company in installing the machine, and these employees were paid by itself. They acted, it is true, under the direction of Ray, but he, it appears, was in fact a common foreman for both companies in installing the machine. Being a joint undertaking, and both companies having coöperated in an act which directly caused an injury to Fliege, they are jointly and severally liable to him.

It has been said to be "well settled that the law will not undertake to apportion consequences between two or more persons jointly guilty of wrongful conduct toward another, though their contributions to the in-

jury were in unequal degrees or from different motives." (*Railway Co. v. Durand,* 65 Kan. 380, 383. See, also, *Kansas City v. File,* 60 Kan. 157.) In *Old Times Distillery Co. v. Zehnder,* 21 Ky. Law Rep. 753, 52 S. W. 1051, Hoffman, Ahlers & Co. contracted to make a heater and place it in a distillery. The foreman of the distillery company directed one of its employees to go and assist in lifting the heater to its place, and it appears that the distillery company had agreed to furnish men to assist in putting the heater in the distillery and was to pay certain employees according to the time employed. It was held that the putting of the heater in the distillery was a joint undertaking of the distillery company and the makers of the heater, and that both parties were liable to a servant of the distillery company who assisted in the work and was negligently injured while doing so.

As the appellants in this case were engaged in a joint operation there was a joint duty imposed upon them to use due care toward Fliege while he was under the machine; and as he was injured through the omission or negligent performance of this duty there was a joint tort, upon which arose a joint and several liability against the companies. As tending to support this view, see *American Cotton Co. v. Simmons,* 39 Tex. Civ. App. 189; *Walton, Witten & Graham v. Miller's Adm'x* [Va. 1909], 63 S. E. 458; *Olson v. The Phœnix Mfg. Co.,* 103 Wis. 337; *Consolidated Ice Machine Co. et al. v. Keifer,* 134 Ill. 481; *Cleveland, C., C. & St. L. Ry. Co. v. Gossett* [Ind. 1909], 87 N. E. 723; 4 Thomp. Com. on the Law of Neg. § 5003; 6 Thomp. Com. on the Law of Neg. § 7435; 1 Cooley, Torts, 3d ed., p. 223; 33 Cyc. 726.

The case appears to have been fairly submitted to the jury as to the liability of either or both of the companies for the injury of the appellee. Whether Fliege was the servant of one or both companies when injured, and their relation to him, depended not alone upon the

contract but also upon the manner in which the contract was executed and the conduct of the companies at the time of the injury. We see no good reason to complain of the instructions, and the objections to rulings on testimony are not deemed to be material.

The judgment of the district court is affirmed.