No. 18,658.

MICHAEL LEONARD, *Appellee*, v. THE UNITED KANSAS PORTLAND CEMENT COMPANY et al., *Appellants*.

SYLLABUS BY THE COURT.

PERSONAL INJURIES — *Gas Explosion* — *Negligence* — *Joint Liability of Cement Company and Gas Company.* In an action against a gas company and a cement company for personal injuries sustained by an employee of the former, through an explosion of natural gas, held that a judgment against both was warranted by evidence of the following facts: The gas company furnished gas to the cement company, measured by meters installed by the gas company in a meter-house built by the cement company; the meters required to be tested every

thirty or sixty days; they were so situated that when a "prover" was applied for that purpose, the gas escaped into the house; an employee of the gas company had provided an extension so that the gas would be carried outside; this, however, interfered with the accuracy of the test, and on that account a representative of the cement company, to whose satisfaction the test was required to be made, objected to its use, and it was abandoned; the test proceeded without it, being made by an employee of the gas company, assisted by the plaintiff; the representative of the cement company sent word to an employee of that company that he wished to see him, and this employee, coming to the meter-house, lit a match near the door to light a cigarette, and thus caused the explosion.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed March 7, 1914. Affirmed.

*Altes H. Campbell,* and *John F. Goshorn,* both of Iola, for the appellants.

*Baxter D. McClain,* of Iola, for the appellee.

The opinion of the court was delivered by

MASON, J.: Michael Leonard was in the employ of the Portland Gas and Pipeline Company, which furnished natural gas for fuel to the United Kansas Portland Cement Company. He was helping in a test of one of the meters through which gas was delivered, when an explosion occurred, causing him serious injury. He sued both companies, recovering a judgment, from which each appeals.

The evidence may be deemed to have established these facts: The meter in question, with two others, was situated in a meter-house built by the cement company. Tests were made every thirty or sixty days. For this purpose what is called a "prover" was used, a funnel-shaped attachment about three feet long, through which the gas is passed as it comes out of the meter. The meter in question was so situated that if the prover was attached directly to it the escaping gas would be liberated within the house. For this reason an

employee of the gas company had provided an "extension" about twelve feet long, to be used between the meter and the prover, so that the gas would be discharged out of doors. The meters were being tested on the part of the gas company by this employee, F. W. Ranger, assisted by Leonard. The operation was watched in behalf of the cement company by Merlin Boyd, who was accompanied. by another employee of that company, one Morrison. Ranger's instructions were to conduct the test to the satisfaction of Boyd. Two of the meters had already been tested, the "extension" having been used in the operation. Boyd, in be- -half of the cement company, objected to the use of the extension in testing the third meter, on the ground that the test so made would not be fair, it being a fact that a more accurate result is obtained by the use of the shorter connection. On account of Boyd's objection, the extension was taken out and the prover connected closer to the meter—so close that the gas escaped inside the house. The operation had been in progress for some time when Boyd asked Morrison to tell David Callaway (another employee of the cement company) that he wanted to see him. Morrison left, apparently to perform the errand, and shortly returned. About five minutes later Callaway came to the door of the meterhouse and lit a match to light a cigarette. The explosion followed.

A reversal is asked upon the ground that the evidence neither shows a joint liability on the part of the defendants, nor a liability on the part of either separately. The jury found that the gas company was negligent in "not having gas meters installed in proper building." This finding, in view of the pleadings and evidence, obviously meant that the meters should have been situated near enough to windows or other openings so that when the prover was in use the gas would escape into the open air. The jury found that the cement company

was negligent in not using an extension to prevent the gas from escaping in the building, and in not using precaution to keep careless employees away from the house during the test.

We think the evidence justified holding the gas company liable for a neglect of its obligation to use due care to provide its employee with a safe place in which to work. While the meter-house was constructed and presumably owned by the cement company, the gas company owned the meters and was in full control of the tests made of them. That they were upon the premises of the cement company did not relieve the gas company from the duty of using diligence to devise safe means of making the tests. (See cases cited in 26 Cyc. 1110, note 58, and Annotations 1901-1913.) It is argued that the finding of negligence on this ground is met by the fact that the gas company had provided an extension for conveying the gas out of the building. The answer to this is that this device was not a complete remedy, because it interfered with the accuracy of the test, and for that reason, upon the objection of the representative of the cement company, was not used. It may reasonably be said that it was negligence on the part of the gas company, in testing its meters, to allow the gas to escape in the house, unless it took some effective precaution to guard against an explosion.

While the cement company was not the employer of the plaintiff, it was bound to use reasonable care for the protection of one in his situation. He was within the rule thus stated in *Heaven v. Pender*, L. R. 11 Q. B. Div. 503, and quoted in *Aaron v. Telephone Co.*, 89 Kan. 186, 131 Pac. 582, 45 L. R. A., n. s., 309:

" 'Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he

would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.  (p. 509.)' "  (p. 189.)

The defendants were engaged in a joint operation in which each had an interest—the testing of the meters. There rested upon them a joint duty to use due care for the safety of those employed in the work.  (*Fliege v. Railway Co.*, 82 Kan. 147, 107 Pac. 555, 30 L. R. A., n. s., 734; *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032.)  Having permitted the house to be filled with a highly explosive gas, it was incumbent upon them to exercise due care to guard against its ignition from any source that might be anticipated.  It was a fair question for the jury whether the careless act of an approaching workman or visitor ought not to have been foreseen, especially in view of the message sent by Boyd to Callaway.  (*Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468, cited in Note, 32 L. R. A., n. s., 811; *Luengene v. Power Co.*, supra.)

In view of the character of negligence found the fellow servant rule does not apply.  The plaintiff can not be charged with assumption of risk or contributory negligence, for while he knew the gas was being discharged into the house he was not bound to suppose that no precaution had been taken against its being ignited.

Errors assigned with regard to the instructions involve substantially the questions already considered. Complaint is made because the full pleadings were embodied in the charge.  While the matter might perhaps have been condensed with advantage, it can not be said that any prejudice resulted.  Complaint is made of the refusal of the court to submit six of the forty-nine special interrogatories prepared by the defendants.  We conclude that two of these were immaterial, that three were substantially covered by the answers given to other questions, and that the remaining one is not of enough importance to justify a re-

versal. The jury were asked whether the injury to the plaintiff was caused by the failure to use the extension, and answered—"Partly so." This answer is complained of as evasive. Possibly, however, the jury meant that the injury was partly due to that cause in the sense that the use of the extension was one of several ways by which it might have been prevented. The question was asked whether the extension, if it had been used, would have conducted the gas out of the house. The answer to this—"Partly so"—suggests a want of frankness, but may have been occasioned by a doubt whether some of the gas might not have escaped on the inside even if the extension had been used.

The judgment is affirmed.