No. 27,252.

JESSE HOWARD, *Appellee*, v. THE JONES STORE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PARTIES—*Joinder of Defendants—Joint Tort.* In an action brought in behalf of an employee of a mercantile company because of an electric shock and injury sustained while handling a telephone in the store, that was out of condition, and the suit was brought against the telephone company which it was alleged negligently installed and maintained the telephone, and also against her employer who failed to furnish her safe instrumentalities with which to work and a safe place to work, it is held that the joinder of both defendants in the action was not improper.

2. MASTER AND SERVANT—*Liability for Injury to Servant—Duty to Furnish Safe Instrumentalities to Do Work.* It was the duty of the employer to furnish its employee a safe place to work and safe instrumentalities to do the work, whether such instrumentalities were directly provided and furnished by the employer or had been procured from and installed by another.

3. TRIAL—*Conduct of Trial Judge—Colloquy with Counsel.* Certain comments of the court in a colloquy with counsel during the trial and its action in that connection are held to be without prejudicial error.

4. MASTER AND SERVANT.—*Liability for Injury to Servant—Evidence.* The evidence examined and held to be sufficient to uphold the findings and judgment against the employer.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed June 11, 1927. Affirmed.

*J. E. McFadden, O. Q. Claflin, Jr.,* both of Kansas City, *Albert S. Marley,* and *W. Haley Reed,* both of Kansas City, Mo., for the appellant.

*A. J. Herrod,* of Kansas City, and *J. B. McFarland,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Opal Howard, an employee of the Jones Store Company, about seventeen years old, suffered a shock and injury while she was picking up a telephone that was out of order and alleged to be in a dangerous condition. Her mother, Jessie Howard, sued the Kansas City Telephone Company, and the Jones Store Company, jointly, to recover damages inflicted, charging that the injury had been sustained through the negligence of both defendants. The jury returned findings in favor of the telephone company, but

Appeal and Error, 4 C. J. p. 955 n. 35. Master and Servant, 39 C. J. pp. 308 n. 13, 322 n. 33, 1044 n. 4; 41 L. R. A. 61; 18 R. C. L. 587. Parties, 20 R. C. L. 678. Torts, 38 Cyc. p. 483 n. 91. Trial, 26 R. C. L. 1026.

found against the store company for $3,000. Later the plaintiff remitted $1,000 of the amount found due and judgment was entered against the Jones Store Company for $2,000. That company appeals from the judgment, and plaintiff appealed from the finding and judgment relieving the Kansas City Telephone Company from liability. Since the appeals were taken plaintiff has asked and obtained a dismissal of her appeal against the telephone company, leaving only for consideration the appeal of the Jones Store Company.

That company complains of the overruling of its demurrer to plaintiff's petition, and an objection is made to the admission of testimony under it upon the ground of misjoinder of causes of action. It contends that there were in fact two separate causes of action stated and commingled in a single count in the petition, and that neither defendant is interested in the cause of action alleged against the other. In the petition it was alleged that the telephone company installed the telephone in the store and was under a duty to maintain it, and recited that Opal Howard, in picking up the telephone which was out of order and in a dangerous condition, received a severe electrical shock, resulting in paralysis, and is suffering from spasticity of the right hand, fingers and forearm. In that connection it was alleged that the Jones Store Company was negligent in failing to provide safe tools and appliances to work with and a safe place in which to work, and that both defendants were careless and negligent in maintaining the telephone in the store of the Jones Store Company. It is contended that the Jones Store Company knew or should have known that the telephone was out of repair and in a dangerous condition. There was testimony to the effect that it had been out of repair for some time, but it is contended that they did not know that is was in a dangerous condition. The jury found, among other things, that the telephone company was responsible for the maintenance of the telephone, and it was its duty to make all necessary repairs; that the telephone company did not know that the telephone was out of order; that Opal Howard received an electrical shock on the telephone when she used it; that there was more electric current present in the telephone at the time than is ordinarily present; that there was a liability of the Jones Store Company in the sum of $2,000, and that there was $1,000 expended for medical services, but as we have seen, that amount was remitted by the plaintiff.

Defendant's first contention is that there was a misjoinder of

causes of action and that the court erred in overruling its demurrer based upon that ground. The plaintiff's petition contained a single count charging both defendants with neglect which caused the injury, but if different causes of action were improperly joined the fact that they were commingled in a single statement instead of being set forth in separate counts, did not preclude defendant from raising the question of misjoinder by its demurrer. (*Benson v. Battery,* 70 Kan. 288, 78 Pac. 844.) But were there distinct causes of action which did not concur in causing the injury? It is said that neither defendant was interested in the negligence or cause of action against the other. According to the averments of the petition, the injury resulted from the neglect and failure to keep the telephone in a fit condition for use. The telephone company had undertaken to maintain and keep it in condition, while it was the duty of the store company to provide its employee safe appliances, which would include the telephone which she was required to use, and also to provide her a safe place to work. Taking the petition at its face value both defendants had duties to perform respecting the condition of the telephone and its fitness for use by employees. It is alleged that both failed in the performance of these duties, and that the injury resulted from their nonperformance. There may have been no concert of purpose or action in the wrongdoing, but that would not prevent a joinder of defendants if the act or omission of each concurred in causing the injury. It has been decided that where—

"An action was brought upon the approved theory that if the negligent acts of several persons, although acting independently of each other, concurrently result in injury to another, each of the wrongdoers is answerable for all of the resulting damages and may be sued jointly or separately, as the injured party may elect." (*Arnold v. Milling Co.,* 93 Kan. 54, 143 Pac. 413. See, also, *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *Leonard v. Cement Co.,* 91 Kan. 735, 139 Pac. 478.)

The allegations are to the effect that each defendant had an interest in keeping the telephone in a fit condition and therefore it cannot be held that it was an improper joinder. The fact that plaintiff failed to establish a liability against the telephone company does not militate against the order overruling the demurrer. In no event can it be said that the store company was prejudiced by the joinder if the evidence warranted a finding that it was responsible for the injury.

It is insisted that the demurrer to the evidence should have been sustained. It must be conceded that it was the duty of the defendant to furnish its employee a safe place to work and safe instrumentalities to carry on its work, whether they were directly produced by the defendant or obtained from another. These being the obligations of the defendant the employee had a right to assume that the appliances were fit and safe for use. In *Railway Co. v. Kingscott*, 65 Kan. 131, 69 Pac. 184, it was said:

"The duty of inspection and of furnishing safe instrumentalities for its employees devolved upon the company itself, and those who performed those duties represented the company, and for their negligence the company is liable under the rule of the common law." (p. 136. See, also, *Railroad Co. v. Penfold*, 57 Kan. 148, 45 Pac. 574; *Phillips v. Armour & Co.*, 108 Kan. 596, 196 Pac. 245; *Jones v. Atchison, T. & S. F. Rly. Co.*, 118 Kan. 116, 233 Pac. 1019.)

It is argued that there was no testimony produced by plaintiff to show that the Jones Store Company knew that the telephone was in a dangerous and harmful condition. It is not denied that notice had been brought to the company that it was out of condition. One of the employees testified that they had had trouble with the telephone for quite a while before the occurrence in question, in that the head pulled out of the stem. She stated that on the morning in question she heard Opal Howard scream and when she went over to where Opal was she was holding onto her arm. Another witness testified that she had called the attention of a superintendent of the defendant to a defect, that the top or mouthpiece of the telephone came out of the stem. Still another testified that the head came off of the stem two or three times before the occurrence when she had used it, and that after Opal had received the shock the superintendent told the employees not to use it again. Opal testified that when she took hold of the telephone with her fingers extended down the stem, the mouthpiece came off and exposed a wire and she received a shock which almost knocked her off the chair, and caused pains in her hand and arm extending from the wrist to the shoulder. With notice of the defective condition of the instrument thus given, the defendant is hardly in a position to insist that it had no knowledge that the appliance was out of condition. Whether the contact with the defective instrument and exposed wire caused sufficient voltage to shock and injure plaintiff as claimed, was a question for the jury. Much testimony was offered as to the effect of an electrical shock, and as to whether the contracture or

paralysis of the muscles of the hand was the result of the shock. Some of the expert witnesses gave opinions to the effect that there was no real atrophy of the hand, but that Opal was suffering from psychoneurosis. However, there was medical and expert testimony to the contrary. These witnesses stated that an electrical shock could produce paralysis of the ulnary nerves of the hand, that there was paralysis of the hand and that the shock could and did cause the conditions of the hand and arm. In this state of the evidence it cannot be said that the findings and verdict are without sufficient support.

There is complaint of comments of the court which it is urged caused prejudice to the rights of the defendant and prevented a fair trial. While a witness for plaintiff was testifying as to the effect of an electrical current passing through the body, the court took up the inquiry and after stating that the witness had given symptoms of electrical shock, to wit, that there would be pallor, loss of motive power and spasticity, desired to know what effect electricity had upon the cells of the body and how the witness could tell whether the result was of electricity or of disease that affected the nerves. The court said to the witness who testified that it was electrical and that he had given the effect, "I am trying to find out how you distinguished that state from one caused by disease or neurosis." Counsel for defendant then interrupted to say, "That is by external examination." The court then said:

"Yes. This witness said to the jury, I find the hand in a certain condition. I know that. It is my best judgment that is the result of electricity. Of course if it had been a bullet, we could trace it. What I am trying to get now from the doctor is, Can he give us any brand that is on it of electrical injury? Is there any way that medical science can tell?"

It is argued that the remark, "It is my best judgment that is the result of electricity," was the expression of an opinion upon one of the issues in the case and was necessarily prejudicial. It is plainly disclosed that the inquiry of the witness, which was quite extended, as to the effect of electricity upon the body, had not been satisfactorily answered. The witness had stated the manifestations or symptoms of an electrical shock, and the court had endeavored by a number of questions to have him state the effect of such a shock upon the cells or nerves of the body. It was in that connection that the remark was made in which he said that he knew it was electricity, but he desired to have the witness state the effect of a charge

and not merely the symptoms of a charge. He was dealing with the abstract question and was exposing the weakness of the testimony of plaintiff's witness and in that way was really aiding the defendant. We think no prejudice could have resulted from the remark. More than that, the court at the end of the inquiry stated:

"The doctor's testimony does not give the jury any light as to what condition he found was caused by electrical shock. It will be stricken out. The word 'shock' may stand, unmodified by 'electrical.'"

Complaint is made of the action of the court when another witness was called in behalf of the plaintiff of whom questions were asked respecting an increase of voltage coming over a wire by reason of the head of the telephone coming off or by reason of the wires coming in contact with a higher potential. It had been shown that the head of the telephone came off. Counsel for defendant objected that the questions were not within the issues of the case. In a colloquy between the court and counsel, the latter persisted in objections that the questions were beyond the issues and also that the witness was not shown to be qualified to answer or had knowledge concerning electricity. The court remarked, it was "not going to deal with any such pusillanimous proposition." Counsel objected to the remark as prejudicial and the court said: "Put in the record, the court says the attitude of the witness shows knowledge of the subject under consideration. Why just delay. The court has announced he wanted to examine this on a scientific basis." Counsel then stated, "I want to take exceptions." The court remarked, "You have an exception. Sit down, or you will get more than an exception." Counsel evidently did not observe the direction, but continued by asking that the jury be discharged because of the remark of the court. The court then imposed a fine of $5 upon counsel for contempt of the court, which it appears was later remitted.

It was competent for the court to supervise the trial and to prevent unwarranted and useless objections to the effect that questions were not within the issues, but the term "pusillanimous" used in characterizing the conduct was inappropriate and, as used, unjudicial. Evidently the court, in reaching for an adjective to characterize the proposition which counsel was pressing, got hold of one that was too harsh and severe, but it is not easy to infer that it operated to the prejudice of the defendant. It was the duty of counsel to treat

the court with deference and respect, and equally the duty of the court to be circumspect and careful in according courtesy and fair treatment to counsel appearing before it. While the court for sufficient cause may reprove counsel on occasion for improper conduct, it should never be done in a manner that will operate to the prejudice of litigants. After reading the entire record, however, we do not feel warranted in holding that the comments and action complained of were prejudicial to the rights of the defendant or that the jury were improperly influenced by the comments of the court.

We conclude that there was sufficient evidence to support the findings of the jury and that there was no error in overruling the motion for a new trial.

The judgment is affirmed.