CHARLES S. LUENGENE, *Appellee*, v. THE CONSUMERS
LIGHT, HEAT AND POWER COMPANY, *Appellant*.

No. 17,531.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Gas Explosion—Personal Injuries—Evidence.*
In an action for damages for personal injuries caused by a
gas explosion in a building, against a company engaged in the
sale and distribution of natural gas, an injured person who
has exercised proper care for his own safety is not bound to
show by what means the gas was ignited.

2. DEFECTIVE PIPES—*Other Explosions—Notice to Superintend-
ent.* A letter from the mayor to the superintendent of the
company supplying natural gas in the city, calling attention
to recent gas explosions and requesting repairs to prevent
further damage by escaping gas, is competent evidence on
the question of notice to the company in an action relating
to an explosion occurring soon afterwards, although the par-
ticular location of defects was not stated in the letter.

3. ——— *Same.* Where odors and other indications of the es-
cape of natural gas appeared at certain premises, and occu-
pants of the premises affected called the gas company by
telephone, making complaint thereof and asking that some
one be sent to investigate the matter, and thereupon a man
came and made such investigation, evidence of these facts
is competent as tending to show notice to the company.

4. EVIDENCE—*Newspaper Reports—Notice.* The testimony of
the superintendent of a gas company that he was a sub-
scriber to newspapers which contained accounts of gas ex-
plosions in the city and had read such articles is, in the
circumstances stated in the opinion, competent evidence upon
the question of notice to the company of defects and leakage.

5. JOINT WRONGDOERS—*Joint Liability.* A gas company is not
absolved from the consequences of its negligence in per-
mitting the escape of gas causing an explosion and injury
in a particular place, merely because gas also escaped and
accumulated in the same place through the negligence of
another party. "Where two or more parties, by their con-
current wrongdoing, cause injury to a third person, they are
jointly and severally liable." (*Kansas City v. Slangstrom,*
53 Kan. 431, syl. ¶ 2, 36 Pac. 706.)

Luengene v. Power Co.

Appeal from Shawnee district court.    Opinion filed
April 6, 1912.    Affirmed.

*Charles Blood Smith, Edwin Hedrick, jr.,* and *Samuel
Barnum,* for the appellant; *Sears, Meagher & Whitney,*
of counsel.

*Z. T. Hazen,* and *R. H. Gaw,* for the appellee.

The opinion of the court was delivered by

BENSON, J.:  The appellee sued to recover damages
for injuries caused by an explosion of gas in the base-
ment of the Capper printing house, at the southeast
corner of Jackson and Eighth streets in Topeka, where
he was working as a pressman on the 19th day of De-
cember, 1909.  It is alleged that the gas company was
negligent in failing to keep and maintain its mains,
pipes and connections in proper condition, and in neg-
ligently permitting gas to escape into manholes and
trenches, and into and through a telephone conduit to
the place where the explosion occurred.  The answer
contains a general denial, and a defense based upon an
allegation that the city had negligently, and without
notice to the company, placed a water pipe over and
resting upon the gas main in such manner as to cause
the latter to break and leak gas, and that if any gas
escaped into the telephone manhole and conduit it was
from such break.  The company also pleaded con-
tributory negligence.

Evidence was offered tending to prove the following
facts:  Gas escaped in the summer and fall of 1909 in
such quantities as to be offensive to people residing
near the intersection of Seventh and Jackson streets,.
causing a shortage in the supply of two families for
domestic uses; a gas main extended east and west in
Seventh street, from which service pipes of the com-
pany led to adjacent property, where such indications
of leakage appeared; two explosions occurred in De-
cember, 1909, the last one five days before the one here

complained of, and one on the following day in a cistern in Seventh street about 200 feet from the intersection referred to, and also in a telephone manhole in Seventh street about 600 feet from such intersection ten days before the plaintiff was injured. There was an explosion in the telephone manhole at Seventh and Jackson streets and another in a manhole between that point and the Capper building on the day following the explosion in that building. These manholes were connected by telephone conduits, one of which led from the one at Seventh and Jackson streets into the basement where the appellee was injured, which is about 600 feet distant. On December 23 the gas main and connecting service pipes on Seventh street at the intersection of Jackson street and easterly therefrom were uncovered, and it was found that at and near their connection with the main these pipes were perforated—little holes appeared therein about the size of an eight-penny nail head. The pipes were corroded and the threads of some of them where they were screwed into the main were eaten off with rust. Gas was escaping through these openings and took fire in the ditch. A piece of the perforated pipe was in evidence. These service pipes, or some of them, led to the premises where the escape of gas had been noticed in the summer before. The gas main was put down in the year 1879. Some of the service pipes were put in then and some afterwards. The main, which is a three-inch pipe, was found broken at a point underneath a water lateral six inches in diameter which crosses from the north side of Seventh street on the east side of Jackson street to a hydrant. This water lateral was placed there in April, 1909. The water pipe was raised a little at that point in order to go over the gas main, and lowered beyond it. When laid it was about the thickness of a hand above the gas main. It was depressed about one and one-half or two inches at the break, leaving an aperture through which gas was escaping, although the broken

ends were closely joined at the top. The water pipe above was close to it, leaving an interstice of possibly a quarter of an inch filled with clay. These defects were near the telephone manhole at the corner before referred to. A sewer leading along Seventh street passed within ten feet of that manhole. Escaping gas was discovered at various other near-by points in the city a few days after the appellant was injured.

Occupants of the premises where gas escaped the preceding summer called the gas company at that time by telephone, making complaint and asking that some one be sent to ascertain about the leakage. Soon afterward a man came to the premises, examined the gas pipes in the buildings and made examination in the alley at the rear, but nothing further was done and the leakage continued. On December 17, 1909, the mayor addressed a letter to the superintendent of the gas company stating that much gas was escaping from the mains and service pipes, which had already caused considerable damage and was a menace to life and property, and requested that repairs should be made. On December 20, in a conference with the mayor, the superintendent attributed the trouble to sewer gas. Two daily newspapers of the city frequently published articles in the month of December, 1909, and before the explosion in the Capper building, referring to gas explosions in the city and the defective condition of mains and pipes. The superintendent was a subscriber to these papers and read these articles. His office is situated within three blocks of the intersection where the defective pipes were found. When the water main was being put down along Seventh street, while the work was in progress east of and near to Jackson street, the attention of the gas company was called to that work by the superintendent of the city waterworks, and a foreman of the gas company came and looked after some service pipes crossed by the gas main between Jackson street and the alley east of it. The water

lateral was then being laid across Seventh street over the gas main. A foreman of the water department and a foreman of the gas company stood above the ditch where the pipes crossed and where the break afterward appeared, as already stated, and talked there about five minutes with the crossing below open and in view, but nothing was said about the pipes at that point or the crossing. The ditch remained open at that place about two weeks. The gas company had not been called, however, with respect to this crossing, but to look after service pipes between that point and the alley to the east.

There was no evidence of the cause of the ignition of gas in the basement where the explosion occurred by which appellant was injured, and the jury so found. An instruction was asked to the effect that in the absence of such evidence the action must fail. This was refused, and an instruction was given to the effect that such evidence was not essential to a recovery if the proof was otherwise sufficient, and the plaintiff himself was not negligent. This instruction, and the refusal to give the one requested, are among the principal reasons urged for reversal of the judgment. The argument is that there was an efficient and direct cause intervening between the negligence of the company and the injury to the appellant; that the ignition was this proximate cause, and that the alleged negligence of the company only furnished the condition or gave rise to the occasion by which the injury was made possible. The opinions of this court in *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338; *Rodgers v. Railway Co.,* 75 Kan. 222, 88 Pac. 885; *Gas Co. v. Dabney,* 79 Kan. 820, 101 Pac. 488; and *Colwell v. Parker,* 81 Kan. 295, 105 Pac. 524, are cited in support of this proposition.

The principle enunciated in the cases cited is not applicable to relieve a party from such results of his negligence as ought reasonably to have been foreseen. A multitude of definitions has not made the meaning

of the term "proximate cause" entirely clear in every possible situation, and it is affirmed by a distinguished author that no fixed and immediate rule can be applied to all cases. The same author quotes from an opinion in *Wiley v. Inhabitants of Belfast,* 61 Maine, 569, 575:

"If it ever happens that logic and common sense can not be reconciled in the application of this doctrine to the decision of causes, logic must give way." (1 Thompson, Com. on the Law of Neg. § 47.)

To hold that a man engaged in his usual work, exercising ordinary care and unwarned of any danger must when injured by such an explosion prove what intervening hand or agency caused the spark is unreasonable and in many cases would be impossible. A cause of injury is not too remote if according to the usual experience of mankind the result ought to have been apprehended. (*Schwarzschild v. Weeks,* 72 Kan. 190, 83 Pac. 406; *Lane v. Atlantic Works,* 111 Mass. 136.) If the intervening agency is something not likely to occur or to be foreseen the rule is otherwise. This distinction is stated in the Columbia case thus:

"While one is responsible for such consequences of his fault as are natural and probable, and might therefore be foreseen by ordinary forecast, if his fault happened to concur with something extraordinary and therefore not likely to be foreseen, he will not be answerable for the extraordinary result." (*Railway Co. v. Columbia,* 65 Kan. 390, 398, 69 Pac. 338.)

In the Dabney case it was shown that gas escaped from an unfinished gas well into the open air during the suspension of work for the night. An explosion occurred, but there was no evidence showing how the escaping gas came in contact with fire. It was said that while it was possible "that lightning might strike the well and cause an explosion, or that some careless person might throw a lighted match into it, or fire might by some accidental means be brought in connection with the gas; but it is apparent that in the usual or ordinary course of events these would not be expected

to occur." (*Gas Co. v. Dabney,* 79 Kan. 820, 827, 101 Pac. 488.) In *Gas Co. v. Carter,* 65 Kan. 565, 70 Pac. 635, it appeared that gas had been allowed to escape and accumulate in a cellar, and from some unknown cause exploded. Such an explosion was a natural and probable consequence which might reasonably have been foreseen, and the company which negligently permitted the gas to escape was held liable for the resulting damages. It was contended. as it is here, that a failure to prove how an accumulation of gas in a cellar became ignited was fatal to a recovery of damages caused by its explosion. It was said:

"To this contention we do not agree. Defendant was employing for its profit a subtle and highly explosive agency. The rule at common law is that, where an agent so introduced is controllable by care, attention or science, he who receives the benefit must assume the responsibility." (p. 568.)

The same principle was applied in a similar case in *Oil City Gas Co. v. Robinson,* 99 Pa. St. 1, 13 Repr. 253, and is stated by Thornton, with illustrations, in sections 614 and 637 of The Law Relating to Oil and Gas. Other authorities are collated in a note in 32 L. R. A., n. s., 809-819.

It is contended that the evidence is insufficient to show notice to the company of the defective condition of its pipes. This evidence has already been stated and if competent was sufficient to uphold the finding that the company had notice. This subject has been recently considered in this court (*Hashman v. Gas Co.,* 83 Kan. 328, 111 Pac. 468), and extended comments here are not necessary. Care was required commensurate with the dangerous character of the agency and the consequences that ought to have been apprehended from its escape. (*Hartman, Appellant, v. Citizens Nat. Gas Co.,* 210 Pa. St. 19, 59 Atl. 315.) It is true that no one informed the company that gas was escaping at the particular place of the injury, and this was true in the Hashman case also, but that it was escaping in

the vicinity and only a block distant; that conduits and other passages would probably conduct it to places where it would cause disaster; that such disasters had already occurred; that it was escaping quite near the very place where the defects were afterwards found in such quantities as to cause complaints; that such escape and explosions therefrom were a matter of notoriety as shown by newspaper publications; and that these were read by the superintendent of the company, are sufficient to warrant the finding of notice. Besides, there was a formal notice from the mayor, calling attention to public danger and demanding action. It is said that this was insufficient because no particular locality was pointed out. It would seem to be the duty of a gas company in the circumstances shown in this case to take some active measures to ascertain the location and determine the cause. It is argued that as only two days intervened between the mayor's written notice and the explosion in question sufficient time had not elapsed, but this did not justify inaction, in view of the information already possessed by the company. It was for the jury to determine whether reasonable vigilance would not have discovered the defects before the disaster complained of which were found soon afterward. (*Shirey v. Consumers' Gas Co., Appellant*, 215 Pa. St. 399, 64 Atl. 541.)

It is argued that the complaints made in the summer and fall by residents near the seat of the trouble should not have been allowed because the identity of the person called by telephone and of the person who appeared on the scene in response thereto were not established. There was but one gas company in the city and the call was upon that company. The person coming to make examination appeared to be acting pursuant to the complaint in the usual course of such business. It was not shown on the trial nor is it asserted here that the complaints were not received. In the circumstances shown it can not be held that the admission of the evi-

dence was erroneous; and its weight was for the jury to determine.

It is contended that the evidence relating to newspaper publications concerning previous explosions was incompetent. The evidence was elicited by the examination of the superintendent of the company to show that his attention had been thus called to the matter and was admissible for that purpose, as the evidence of conversation conveying the same information would have been.

In the cross-examination of an officer of the gas company questions were allowed to be asked designed to ascertain whether this company paid to another company supplying it with natural gas for all gas received or only for that sold and delivered by this company to its customers. It is argued by the appellee that this evidence was allowed because any substantial discrepancy would tend to show a leakage. It must be conceded that the evidence had only a remote bearing, if any; upon the issue, but it could not have been prejudicial, especially in view of the witness's statement that he was not sufficiently acquainted with the business to say whether his company would be the loser from leakage or not.

Objection was made to evidence of the escape of gas after the explosion in question, but the court correctly limited the application of this evidence to its bearing upon the condition of the pipes and mains before the injury to appellee occurred. The same question was presented in the Hashman case, where it was held that there was no error in allowing such evidence for the purpose to which it was limited. Other objections to testimony have been considered but no error appears in the rulings thereon.

It is insisted that several of the findings are unsupported by evidence. These findings are to the effect that gas escaped from the service pipes on the north side of Seventh street and entered the basement of the

printing house through the telephone conduits.  It was shown, as we have seen, that the pipes were defective and that gas escaped therefrom; that the telephone conduit led from the manhole at Seventh and Jackson streets directly to the basement, where it exploded; that the volume of gas issued from the conduit, and that an explosion had occurred in other manholes also connected by conduits to the same manhole.  It is true that the course of the gas from the defective pipes to the manhole near by was not traced by any witness.  The same difficulty appears in the application of the defendant's theory that the gas in the conduits all came from the broken main, for no witness traced its course from the break to the conduit.  Besides, there was no evidence of the means by which it reached the cistern where other explosions had occurred.  The fact remains that natural gas was in these conduits; it came from the defendant's pipes or main, for there was no other source; and it was for the jury to find whether it came from the defective service pipes, the broken main, or both.  The jury found that the company had no notice of the leak from the break but did have notice of gas escaping from the defective service pipes.  If the company had no notice of the leak in the main where broken it could not have been liable under the instructions given to the jury, for injuries from gas escaping from the break.  It is therefore unimportant now whether such break resulted from the negligence of the city in laying its water pipe above the gas main, or of the company in suffering this to be done without objection or further examination, and apparent contradictions in the findings upon that matter, complained of by the appellant, are immaterial.  These findings are:

"IV$a$.  Was it the negligence of the defendant that caused the said break in the main at the point of Jackson and Seventh streets and caused the escape of said gas therefrom?  Answer.  Yes, and contributory cause.

"X.  What caused the break in the defendant company's main at the point where the water lateral was

laid near the corner of Jackson and Seventh streets? Answer. We don't know.

"XII. Was it the negligence of the defendant company which caused the break in its main at the corner of Seventh and Jackson streets? Answer. Yes; and contributory causes."

It is probable that finding IVa was based on the supposed negligence of the gas company in offering no objection to the manner in which the water lateral was laid over its main, and its failure to guard against consequences to be anticipated from laying it in that manner. In answering that they did not know what caused the break it may be presumed that the jury understood the question to relate to the particular means or agency operating immediately to cause the break, such as the weight of the water pipe, the settling of the ground, or other disturbance. The answers in findings IVa and XII compared with finding X indicate that the jury understood that the question referred to some such specific agency and not to negligence permitting it to operate.

The company is not absolved from the consequence of its negligence in permitting the escape of gas from its service pipe to accumulate in the basement of the printing house, merely because gas also escaped and accumulated there from the broken main, although it should be conceded that it was not liable for the latter and that the city was. The city might be responsible for the broken main and the gas company for the defective service pipes, and if these causes operating together caused the explosion, the negligence of one would not excuse the other. "Where two or more parties, by their concurrent wrongdoing, cause injury to a third person, they are jointly and severally liable." (*Kansas City v. Slangstrom*, 53 Kan. 431, syl. ¶ 2, 36 Pac. 706; *Kansas City v. File*, 60 Kan. 157, 55 Pac. 877; *Arnold v. Milling Co.*, ante, p. 12, 119 Pac. 373; *McKenna v. Gas Co.*, 198 Pa. St. 31; 47 Atl. 990; *Louisville v. Schneider*, 143 Ky. 171, 136 S. W. 212, 35 L. R.

A., n. s., 207; Note, 29 L. R. A., 356; Note, 32 L. R. A., n. s., 809; 1 Thompson, Com. on the Law of Neg. § 75.)

The jury were asked to find whether gas escaped in certain designated parts of streets about the intersection of Jackson and Seventh streets. They answered, "Yes, from Seventh street cistern." Complaint is made that the answer is evasive, but the cistern was in one of the designated parts of streets, and if it was deemed important to have a finding whether gas came to the surface otherwise than through the cistern a request should have been made for a further answer. In any event, in view of the evidence showing the escape of gas in that locality and the several explosions therefrom, the fact sought to be developed would not be controlling.

An instruction was given to the effect that if the break in the main at Seventh and Jackson streets caused the escape of gas and the broken condition had existed for such length of time that in the exercise of due care it should have been known and repaired, and the company failed and neglected to discover and repair the broken pipe, and injuries to the plaintiff resulted from gas escaping from such break and other gas from the service pipes, the company was negligent in failing to repair the broken main. This is alleged to be erroneous, but as the jury found that the company had no notice of the break referred to, and the court by other instructions predicated liability upon such notice, no prejudice resulted from the instructions, even if erroneous.

All the instructions given and refused have been examined. The substance of those refused, so far as deemed proper and material, appear to have been included in the instructions given. Upon consideration of the instructions criticised in the brief, as well as those requested, we find no prejudicial error in the rulings thereon.

The judgment is affirmed.