LELIA M. FINSON, *Appellee*, v. THE CITY OF TOPEKA, *Appellant*.

No. 17,593.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT — *Negligence* — *Escaping Gas* — *Safe Place to Work.* Plaintiff's husband, while in the employ of a city as a laborer, was killed by an explosion of natural gas in a fire cistern belonging to the city, in which he was at work. The gas escaped into the cistern by reason of defective gas mains in the city streets maintained by a gas company operating under a franchise granted by the city. There was evidence tending to show that the city was negligent in permitting the gas to escape into and remain in the cistern. *Held,* that an action in damages may be maintained against the city for such wrongful death.

2. ———— *Same.* The liability of the city in such a case rests wholly upon its neglect of the master's duty to furnish the servant a reasonably safe place in which to work.

3. ———— *Same.* In such an action a demurrer was properly sustained to an answer setting up the fact that the gas escaped into the cistern by reason of the negligence of the gas company in failing to keep its gas mains and service pipes in proper repair.

4. ———— *Same.* There was evidence tending to show that the immediate cause of the explosion was the act of another employee of the city who struck a match for the purpose of lighting a cigar. The proximate cause of the injuries resulting from the explosion is held to be the negligence in permitting the gas to escape into and remain in the cistern. Where dangerous gases are thus confined an explosion is regarded as a natural and probable consequence which might reasonably have been foreseen.

Appeal from Shawnee district court. Opinion filed May 11, 1912. Affirmed.

*W. C. Ralston,* city attorney, and *James W. Clark,* assistant city attorney, for the appellant.

*Matt Campbell,* for the appellee.

The opinion of the court was delivered by

PORTER, J.:  Plaintiff brought this action to recover
for the death of her husband, who died as a result of
injuries received in an explosion in a fire cistern of the
city, in which he was at work as a laborer in the street
department.  The jury awarded her $4500 damages
and the city appeals from the judgment.  The cistern
where the accident occurred is located in West Seventh
street, beneath the surface of the street.  It had be-
come out of repair, and the walls were cracked and
broken.   On December 14, 1909, Claude E. Finson,
the plaintiff's husband, with four others, including the
city street commissioner, went down into the cistern
for the purpose of cleaning it out and repairing the
walls.  The evidence showed that shortly after they
entered the cistern the street commissioner struck a
match to light his cigar, which caused an explosion of
gas that had accumulated in the cistern, and several of
the workmen were injured, including plaintiff's hus-
band, whose injuries resulted soon after in his death.

For many years previous to the explosion a gas main
had been located in West Seventh street across the
street from the fire cistern.  It had been for some
years maintained and operated by a gas company un-
der a franchise granted by the city as a part of a sys-
tem for supplying natural gas to the city and private
consumers.  Soon after the explosion occurred, the
gas company uncovered a large part of this main, and
it was found to be in a broken and defective condition;
and the service pipes attached thereto were found to
be rusted out and perforated with holes so that in
many places large quantities of natural gas were
escaping therefrom.

Complaint is made because the court sustained a
demurrer to the second defense in the answer, wherein
the city alleged that the accident was caused wholly
by the gross negligence of the gas company in failing

Finson v. City of Topeka.

to keep its system of gas mains and service pipes in proper condition. This may be considered in connection with the principal contention of the city, which is that its relation to the mains and pipes of the gas company is strictly governmental. It is claimed that in granting the franchise to the gas company the city exercised merely a function of government, that the company is in no sense its agent and the city can not be held liable for the torts of the company; and that the latter alone is liable for damages resulting to persons or property from the failure to repair its pipes and mains. It is said that while the city might, through the exercise of its police power, require a gas company operating within the city and using the city streets to adopt reasonable regulations for the protection of life and property, the law is well settled that no action will lie against a city for damages for the exercise or nonexercise of such power. In this connection it is urged that the city had no private interest in the granting of the franchise and received no benefit or profit from the business conducted thereunder. Relying upon these propositions, it is insisted that upon showing that the explosion resulted from the negligence of the gas company, the city was absolved from any liability to plaintiff, and, therefore, that the court erred in sustaining the demurrer and in giving a certain instruction which will be referred to later.

This court, in a number of decisions, has recognized the two-fold functions exercised by cities, and has approved the general doctrine contended for by the defendant. In granting the franchise to the gas company, the city exercised a purely governmental or political function, and could not be held liable for the consequences of its exercising such power or for any failure to exercise its police power by requiring the gas company to keep its mains in repair. (*Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490, and cases cited; *City of Caldwell v. Prunelle,* 57 Kan. 511, 513,·

46 Pac. 249; *Freeman v. Chanute,* 63 Kan. 573, 577, 66 Pac. 647; *Edson v. Olathe,* 81 Kan. 328, 105 Pac. 521.) The action can not be predicated upon the exercise by the city of governmental power in granting the franchise, or upon its failure to require the gas company to keep its mains in repair. It is true that a large part of plaintiff's evidence was offered to show the defective condition and lack of repair in the pipes and mains of the gas company, and it may have been offered by the plaintiff partly upon the theory that the city is liable for its failure to require the gas company to repair the defective pipes and mains. The evidence was competent and relevant only for the purpose of showing notice to the city of the dangerous condition of the cistern. The liability of the city springs solely from the neglect of its duty as an employer to furnish its employee a reasonably safe place in which to work.

The instruction of which the most complaint is made is number 17, and reads:

"If you find from the evidence that the gas mains or pipes in the vicinity of the cistern in question were in a defective condition, that gas was escaping therefrom into the cistern and manholes in the vicinity, and that the city had knowledge of said condition, or in the exercise of ordinary care should have known of it, for a sufficient length of time for it in the exercise of ordinary diligence to have caused said gas pipes or mains to be repaired or the gas to have been shut off from that part of the city, and failed to do so, but permitted said gas pipes and mains to remain in such defective condition and the gas to continue to escape therefrom and to fill the cistern in question and an explosion occurred, then I instruct you that such failure on the part of the city would constitute negligence."

This correctly states the law as applied to the facts. No matter where the gas came from, if, through the negligence of the city it was permitted to remain in the cistern and injured a workman, the city would be liable to the same extent that any employer would be under the same circumstances. It would have been

equally liable upon the facts shown in the evidence if the cistern had filled with sewer gas, or with natural or artificial gas that had leaked from the pipes of some manufacturing establishment. If any kind of highly inflammable gas had been allowed to accumulate in the cistern, or if dynamite or any dangerous explosive had been placed there by any person, and the city had been shown to have been negligent in allowing it to remain, or in sending its employees there to work, and an explosion had occurred which caused an injury to the workmen without their fault, the city would have been liable for the damages occasioned by its neglect of the master's duty. That a municipal corporation is liable to an employee for injuries resulting from its neglect to furnish him a reasonably safe place in which to work was decided in *Emporia v. Kowalski,* 66 Kan. 64, 71 Pac. 232; *Bowden v. Kansas City,* 69 Kan. 587, 77 Pac. 753, 105 Am. St. Rep. 187, 66 L. R. A. 181; *Roberts v. St. Marys,* 86 Kan. 403, 121 Pac. 367.

Counsel for plaintiff have argued in the brief that the city is liable for the reason that the defective gas mains and the cistern were in the street and the city is charged with the duty of keeping its streets and public ways in a safe condition. No claim of this kind is set up in the petition. Besides, as the injury did not happen to anyone using the street as a thoroughfare or public place, the fact that the cistern and the defective pipes were in a street adds nothing to the liability of the defendant. If the fire cistern had been located away from a street upon a lot belonging to or used by the city and it had permitted the cistern to fill with inflammable gas and had negligently sent its workmen there under the same circumstances, it would be liable.

The city makes the further contention that the proximate cause of the explosion was the negligent act of the superintendent of streets in striking a match to light a cigar and that he was not acting at the time

within the scope of his employment. Where gas of such highly inflammable character as to be liable to explode when brought into contact with fire is negligently allowed to escape into a confined place like a room or cistern, the proximate cause of its explosion is held to be the negligent act of permitting the gas to escape into and to remain in such a place. An explosion of subtle and dangerous gases when thus confined is regarded as the natural and probable consequence which might reasonably have been foreseen. This principle was recognized and followed in the recent case of *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032, and it was held that the person injured could recover in an action against the gas company without producing evidence to show by what means the gas became ignited. The opinion draws a distinction between the rule applicable to the explosion of a dangerous gas which had been allowed to escape into a confined place, as in *Gas Co. v. Carter*, 65 Kan. 565, 70 Pac. 635, and the rule in a case where natural gas was allowed to escape into the open air from a gas well, as in *Gas Co. v. Dabney*, 79 Kan. 820, 101 Pac. 488. In the case last cited the explosion was held not a natural and probable consequence of allowing the gas to escape.

It follows, therefore, that requested instructions 11 to 15, respecting the proximate cause of the explosion, and the negligence of a fellow servant, were rightly refused. It is claimed that the answers returned to the special questions submitted by the defendant were contrary to the evidence and that a new trial should have been granted. Some of the defendant's witnesses, by whom it was sought to show that plaintiff's husband had actual or constructive notice of the danger in time to have left the cistern before the explosion occurred, were quite uncertain in their recollection of what was said in his presence. The jury passed upon the weight and credibility of the testimony and the trial court has

approved their findings and verdict. We find no error in the admission of evidence, in the instructions, or rulings of the court.

The judgment is affirmed.