No. 25,786.

JOHN F. JONES, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Injury to Servant—Safe Place to Work.* Between trips a motor car was parked by the railroad company in its yards, where it was cleaned by the plaintiff. It was the practice for the engineer to come to the car about an hour before leaving time to prepare the car for the trip. From the time he came on the car he was in control of the same, and at the appointed time drove it from the yards to the station. While at work on the car he permitted another employee of the railway company to place two cans of gasoline on the motor car, and allowed them to remain there for some time near a burning stove, which was contrary to the rules of the railway company. The gasoline was the property of the employee who brought it to the car, and he told the engineer he was going around the "Y" with him to his home. The engineer knew the contents of the cans and while discussing the quality of the gasoline the engineer pulled the cork of one of the cans, allowing the fumes to escape, and immediately there followed an explosion which injured the plaintiff while he was at work in cleaning the car. *Held,* that the railway company became liable to the plaintiff for the injury on the ground that it had failed to furnish him a safe place to work.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed March 7, 1925. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*S. C. Bloss, George T. McNeish, Martin E. Jarvis,* and *Stewart Bloss,* all of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by John F. Jones to recover from the Atchison, Topeka & Santa Fe Railway Company for personal injuries resulting from an explosion which occurred on a motor car that the plaintiff was cleaning. He was awarded damages in the sum of $8,841.82, and from the judgment the defendant appeals.

There is no contention as to the extent of the injury or the right to the award-if there is any liability on the part of the company for the injuries sustained. The regular run of the motor car was from Winfield to Florence, leaving Winfield about 9:25 p. m. and returning at 6:50 the following morning. The car was divided into

Jones v. Atchison, T. & S. F. Rly. Co.

four compartments—engine, baggage, smoking and passenger compartments. When the passengers were discharged at the station in the morning, the car was run some distance into the yards of the company, where it was parked during the day. The practice was for Jones to come upon the car about noon, his duty being to dust and clean the several compartments, washing the windows inside and out, and he was also required to ice it. The engineer of the car, named Robohn, came to the yards about 8:25 p. m. and set about preparations for starting on his run. On the evening of the explosion he came to the car at the usual time, when he put on his working clothes, put oil into the motor, and started the auxiliary motor and the air compressor. He then went about the mixing of light with heavier oils, and while engaged in this work a brakeman named Johnson, who worked on the branch line of the defendant, running between Augusta and Winfield, approached the motor car carrying two cans, which he lifted into the baggage compartment where the engineer was, saying to him that, "The two cans and myself are going round the 'Y' with you to the station." The cans contained gasoline, which Johnson had obtained at Augusta for his own use. It was a high-test gasoline, and he proceeded to tell the engineer about its qualities and the increased mileage obtained from its use in automobiles. Robohn, who had recently purchased an automobile, was interested and talked with Johnson about the gasoline. There is a conflict in the testimony as to this conversation, and also as to the action of Robohn in handling a gasoline can. There is testimony that while discussing the gasoline Robohn went over to one of the cans and pulled out a cork, and when he did so the fumes came out, and immediately there was a flash followed by an explosion.

From the time the engineer came upon the car he was in control of it and remained in control until the car was run down to the station and turned over to the conductor. In the yard, and while the car was in the control of the engineer, Jones helped him and did any work the engineer asked him to do, and he was engaged in cleaning the oil off of a rail and window which the small motor had splashed when the explosion occurred. In the compartment where the gasoline cans were placed, and only a few feet away, was a Baker heater in which a fire was burning.

In their special findings the jury stated that the negligence which

caused the injury was that of Robohn in allowing the cans to remain in the car. It was found that the cans had been in the motor car about twenty minutes when the explosion occurred, and that until the cans were placed there the motor was a safe place in which to work. The jury also found that engineer Robohn was in charge of the car at the time the gasoline cans were put on it. There are findings, too, that Johnson placed the cans of gasoline on the motor car for the purpose of getting a free ride part of the way to his home, and that he was taking the gasoline home for his own use.

The defendant contends that the act of Robohn in allowing the gasoline cans to remain in the car was outside the scope of his employment, not done in furtherance of the defendant's business, and hence should not be regarded as the act of the defendant.

The testimony warranted the finding that Robohn was in control of the car when the explosives were placed thereon and allowed to remain. While he denied he was informed or knew there was gasoline in the cans, the jury has settled that conflict in the testimony, and we must accept as an established fact that he knew the cans contained gasoline. In his testimony he admitted that if he had known there was gasoline in the cans he would not have permitted them to be brought on or to remain in the car. He stated that it was against the rules of the company to carry explosives in the car, and if he had known their contents he would have told Johnson to take the cans out, and if he "had told him he had to get out it would have been his duty to get out." An obligation rested on the defendant to provide Jones a reasonably safe place to work. This duty was a continuing and nondelegable one. (*Carillo v. Construction Co.*, 81 Kan. 823, 106 Pac. 1050; *Weber v. Water Co.*, 89 Kan. 112, 130 Pac. 661; *Barnett v. Cement Co.*, 91 Kan. 719, 139 Pac. 484.) In respect to this duty it has been said:

"As in other cases, the obligation of the master to see that the place where his servant is required to work is reasonably safe, is primary, absolute and nonassignable, in the sense that the master is responsible for the negligence of any servant or agent, of whatever grade, to whom he delegates the performance of it. If a railroad company delegates this duty to a fellow servant of the servant who is injured, it becomes answerable for his negligence in the performance of it." (4 Thompson on Negligence, § 3874.)

The act of Robohn in permitting the placing of explosives on the car cannot be regarded as something wholly apart from his employment or line of duty. In anticipation that gasoline or ex-

plosives might be brought upon the car the company had made the rule excluding them. It was part of Robohn's duty to see that this rule was carried out. Defendant concedes that Robohn, being found in charge of the car, it was his duty to keep off trespassers and protect the property of the defendant while he was in charge. There was an equal obligation at least upon him to protect the servants of the defendant upon the car as well as its property. While he was on duty controlling and guarding the car from improper intrusions he permitted the explosives to be brought upon the car. It was not a departure from the scope of employment in the ordinary sense, but was rather a neglect to perform a duty imposed upon one in the line of his employment. It was an omission of a duty required by the defendant, one which the defendant was bound to see was performed, and the neglect of which imposes a liability for a resulting injury.

In *Finson v. City of Topeka,* 87 Kan. 87, 123 Pac. 723, an employee was killed by an explosion of gas in a cistern where he was at work, and the defendant was held liable by reason of its negligence in not furnishing the employee a reasonably safe place in which to work. In the opinion it was said:

"If any kind of highly inflammable gas had been allowed to accumulate in the cistern, or if dynamite or any dangerous explosive had been placed there by any person, and the city had been shown to have been negligent in allowing it to remain, or in sending its employees there to work, and an explosion had occurred which caused an injury to the workmen without their fault, the city would have been liable for the damages occasioned by its neglect of the master's duty." (p. 91.)

There was evidence in that case tending to show that the immediate cause of the explosion was that another employee struck a match for the purpose of lighting a cigar, and it was contended that he was not at the time acting within the scope of his employment. It was held, however, that the proximate cause of the injury resulted from the explosion and that the negligence was in permitting the gas to escape into and remain in the cistern. The court saying:

"Where gas of such highly inflammable character as to be liable to explode when brought into contact with fire is negligently allowed to escape into a confined place like a room or cistern, the proximate cause of its explosion is held to be the negligent act of permitting the gas to escape into and to remain in such a place. An explosion of subtle and dangerous gases when thus confined is regarded as the natural and probable consequence which might rea-

sonably have been foreseen. This principle was recognized and followed in the recent case of *Luengene v. Power Co.,* 86 Kan. 866, 122 Pac. 1032, and it was held that the person injured could recover in an action against the gas company without producing evidence to show by what means the gas became ignited." (p. 92.)

The cited case is not a close authority, but it has the feature that the city had actual or implied knowledge of the presence of gas and had opportunity to have removed the condition; and here the representative of the defendant in control of the motor car, having knowledge of the character of the explosive in the car, it was his duty to remove it from the car, and in that way make and keep the place safe for the plaintiff to continue his work; but instead of doing so he allowed it to remain for twenty minutes and until the explosion occurred. An incident of his employment was to keep trespassers like Johnson with explosives off the car, and the omission to perform this duty rendered the defendant liable for the resulting injury.

Judgment affirmed.