No. 42,553

Walter Shufelberger, *Appellee,* v. Jim Worden, Sometimes Known As W. A. Worden, *Appellant.*

(369 P. 2d 382)

Opinion filed March 3, 1962.

*I. H. Stearns,* of Wichita, and *J. B. McKay,* of El Dorado, argued the cause, and *E. P. Villepigue,* of Wichita, and *James B. McKay, Jr.,* of El Dorado, were with them on the briefs for the appellant.

*Fred R. Vieux,* of Augusta, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: The plaintiff (appellee) Walter Shufelberger brought this action against Jim Worden, sometimes known as W. A. Worden, defendant (appellant), to recover for personal injuries sustained by reason of the alleged negligence of the defendant. The allegations of the pleadings will not be narrated. Suffice it to say that plaintiff charged defendant with negligence in certain specified particulars. Defendant answered, charging plaintiff with contributory negligence and assumption of risk. Replies denying the charges were filed by the respective parties. On the issues as joined the cause proceeded to trial to a jury.

The following is a very brief summary of the pertinent facts, as

supported by the pleadings and the evidence. The defendant purchased an upright piano from an Augusta resident and borrowed a half-ton pickup truck with Fordomatic drive, and in A1 condition, for the purpose of hauling the piano to his home. Defendant requested plaintiff to assist him in moving the piano to defendant's residence, a distance of approximately one mile. Plaintiff consented. Plaintiff was to receive no compensation; this was merely a service rendered to accommodate defendant.

Both plaintiff and defendant were experienced truck drivers. By way of a rough surface, deep-rutted alley at the rear of the lot they drove onto the premises where the piano was located, backed the truck up to the porch at the rear of the house, and loaded the piano, which weighed 600 to 700 pounds. One of the casters was missing from the piano and the piano was supported at that end by a board. This prevented the piano from being rolled, resulting in the piano's having to be pushed onto the bed of the truck. Plaintiff got into the back of the pickup truck for the purpose of steadying the piano, plaintiff being on the right side and the piano on the left side, and the defendant got into the cab of the truck and proceeded to drive away from the porch toward the alley. The distance between the alley and the point where the piano was loaded was about forty-five to fifty-five feet, and the terrain between the house and the alley was rough. Defendant drove about thirty feet, then when he was approximately twenty feet from the alley he "gunned," or accelerated, the speed of the truck to fifteen or twenty miles an hour. As they approached the alley the plaintiff yelled, "Take it easy!" About that same time, while defendant was in the process of executing a right turn, the truck hit a rut, or ruts, ranging from four to seven inches deep. The defendant jammed on the brakes, the plaintiff and the piano were thrown out of the truck and the piano landed on plaintiff's face and head causing him considerable physical injury and the loss of the industrial use of his eyes.

James R. Garrison, an Augusta policeman, called as a witness for the plaintiff, testified that upon receiving word of the injury he proceeded to the location and there found a pickup truck in the alley, the truck was facing northwest, and a piano was lying six feet or more to the southwest of the pickup truck bed; that there was a considerable amount of blood on top of the piano; that in the alley there were ruts approximately four inches deep. Garrison's testimony was corroborated by another policeman and by a Mr. and

Mrs. Lietzke who lived immediately west of the place of the accident. All testified that the ruts were four to seven inches deep, plainly observable to anyone. The evidence disclosed that when the defendant came to pick up the piano he drove into the alley on the east side of the ruts, and it was not necessary, as he left, to drive either into or across the ruts.

The ambulance driver testified when he arrived at the scene there was no eyeball in one of the plaintiff's orbital cavities, that he could see the openings of the nose where the nose had been and that the nose and facial skin and flesh were hanging loose below plaintiff's chin.

Lewis Howerter testified on behalf of plaintiff that the defendant admitted to him on the evening after the accident that, "I feel like it was my fault," and on cross-examination Howerter reiterated the statement made to him by the defendant. Another witness for the plaintiff, Frank Hoover, testified he had been driving the pickup truck and was familiar with the way it performed; that the brakes were in excellent condition and if the brakes were locked the wheels would either stop or slide; that it was a Ford pickup with Fordomatic drive and when the accelerator was stepped on "it really took out." Hoover had a conversation with defendant relative to how the accident occurred, and defendant told Hoover he guessed he was driving a little bit fast when it happened and that he hit a ditch. The record revealed that two other witnesses for the plaintiff also had conversations with the defendant in which he told them he threw plaintiff out of the truck and the piano hit him.

The plaintiff testified:

"The defendant accelerated the pickup truck pretty hard. He gunned it up to about 15 or 20 miles per hour. He gunned it out to the alley."

The record further disclosed that as they approached the alley plaintiff yelled, "Take it easy!" Then the defendant applied the brakes. He applied the brakes right after plaintiff yelled, "Take it easy!"

Plaintiff further testified, and quoted the defendant as saying,

"I guess I was going too fast when you hallooed, 'Take it easy!' I jammed on the brakes."

Defendant also said that he was going too fast when he jammed on the brakes.

Defendant testified that in his opinion a piano would not have

fallen out under the circumstances if the rate of speed were from three to four miles per hour.

Plaintiff, having had prior experience in hauling pianos, testified he did not consider he occupied a dangerous position while riding in the back of the pickup truck and thought he was perfectly safe.

The jury returned a general verdict in favor of the plaintiff and at the same time, in answer to special questions submitted to them by the court, found the defendant was guilty of negligence in driving without due regard to the condition of the roadway and without due regard to the safety of the plaintiff; that the minimum speed of defendant's truck immediately prior to and at the time of the accident was ten miles an hour; and that the plaintiff was free from negligence. From an order overruling defendant's post-trial motions he appeals.

Defendant first contends that the verdict and the answers to the special questions were not supported by substantial evidence. Defendant concedes that he is familiar with the many decisions to the effect that this court will not invade the province of a jury and set aside answers to the special questions, and likewise a general verdict, where there is any substantial evidence to support them; however, defendant contends that the verdict and the answers to the special questions in the instant case were based upon mere conjecture. No useful purpose would be served in reiterating the mentioned facts or narrating other evidence contained in the record. Suffice it to say there was ample evidence to show negligence on the part of the defendant and to justify the trial court's overruling defendant's motion for a directed verdict at the close of all the evidence; moreover, there was sufficient competent evidence to sustain the general verdict and the answers to the respective special questions finding negligence on the part of defendant as the proximate cause of plaintiff's serious injuries.

Defendant argues in his brief that the basic legal principle involved in this appeal is that one who voluntarily submits himself to a known hazard cannot recover for injury arising out of his assumed risk, and although contributory negligence is an affirmative defense, where the evidence discloses that plaintiff was guilty of contributory negligence as a matter of law, he cannot recover. Defendant contends that when the plaintiff got into the truck to support the piano plaintiff assumed the risk and therefore was guilty of contributory negligence as a matter of law, thus barring his recovery.

It is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that an ordinarily prudent person under like circumstances would not subject himself to it. Danger may lurk in any condition and yet may not be of such character that men of ordinary prudence would hesitate to expose themselves thereto. The danger therefrom must be such that knowledge, or imputed knowledge thereof, would cause an ordinarily prudent person to appreciate the risk therefrom. The principle is too well established to require a citation of authorities to support it, that mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. Mere knowledge of the offending instrumentality does not constitute contributory negligence as a matter of law. (*Wainscott v. Carlson Construction Co.,* 179 Kan. 410, 295 P. 2d 649.)

It must be remembered that both plaintiff and defendant were truck drivers with many years of experience; that plaintiff had previously engaged in the moving of household goods; that it was plaintiff's testimony he did not consider he occupied a dangerous position while riding in the back of the pickup truck; that he thought he was perfectly safe; that he did not deem it unsafe to haul a piano that was not tied down in any way; and that he did not anticipate any danger. With an experienced driver plaintiff had a right to rely on the fact that the defendant would drive carefully because of the rough condition of the terrain leading to the alley, and especially into the alley where the deep ruts existed. Plaintiff was not required to anticipate that such an experienced driver as the defendant would, in the course of forty-five to fifty-five feet, accelerate or "gun" the pickup truck to a rate of fifteen to twenty miles an hour when he had full knowledge that the plaintiff and the 700-pound piano were in the bed of the truck. Whether under the circumstances the plaintiff, as an experienced truck driver and moving man, exercised due care was a proper question to be submitted to the jury. This is the type of action in which every party is entitled to a trial by jury as a matter of right, and it should not be converted into a trial by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged

has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. (*Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 49, 204 P. 2d 752.)

In the instant case we think the contributory negligence of the plaintiff, if any, was clearly a question of fact for the jury.

We shall next consider the doctrine of assumption of risk and its application to the facts in the instant case. While assumption of risk is somewhat akin to contributory negligence, these two doctrines of law are not synonymous because contributory negligence arises out of a tort while assumption of risk arises out of an implied contract. Contributory negligence is a matter of conduct. The essence of contributory negligence is carelessness while the essence of assumption of risk is venturousness and embraces a mental state of willingness. Since there may be a voluntary assumption of risk of a known danger, even though the plaintiff exercises due care, the doctrine of assumed risk is applicable even though the person injured was in the exercise of ordinary care. Contributory negligence is based upon the premise of the plaintiff failing to use due care and being negligent, thus falling below the standard to which the plaintiff should conform for his own protection. (*Kleppe v. Prawl,* 181 Kan. 590, 313 P. 2d 227, 63 A. L. R. 2d 175; 38 Am. Jur., Negligence, § 172, p. 847; 65 C. J. S., Negligence, § 117, p. 709; Sherman & Redfield on Negligence, Vol. 1, § 135, p. 328.)

In *Blackmore v. Auer,* 187 Kan. 434, 444, 357 P. 2d 765, it is said:

"Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee or servant agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee or servant. (56 C. J. S., Master and Servant, § 357, pp. 1148, 1149.)

"In *Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253, it was said:

"'. . . But, reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for, resulting injury. To raise an implied agreement the risk assumed must be known to the employee, or it must be of such nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. It can never be said that one has agreed to assume responsibility for that of which he had no knowledge, or of the existence of which he is not chargeable with notice.' (p. 88.)"

In *Perry v. Schmitt*, 184 Kan. 758, 762, 339 P. 2d 36, we *held* that "The defense of assumption of risk is generally confined to master and servant situations. We have never applied the doctrine as a defense to an action arising under the guest statute, and we are not disposed to do so now."

Without further detailing the testimony we are of the opinion the record before us negates the presence of assumption of risk. In the instant case the defendant failed to show that there was any employer-employee relationship or any contractual relationship, express or implied; nor can it be found in the record that plaintiff received any benefit from the transaction, and in order for assumption of risk to be a defense one or more of the aforementioned conditions must exist. Defense counsel cite no authority where the defense of assumption of risk has been applied in a tort action such as the instant case, and in our limited research we have failed to discover any such authority.

Plaintiff was acting purely for the benefit of the defendant, and the defense of assumption of risk is not applicable under the facts in the instant case. In view of what has been said, the judgment of the trial court is affirmed.

It is so ordered.