No. 42,942

D. O. Concannon, Administrator of the Estate of M. Z. Hall, Jr., Deceased, *Appellant,* v. Ross Taylor, *Appellee.*

(378 P. 2d 82)

Opinion filed January 26, 1963.

*D. O. Concannon,* of Hugoton, and *Wm. P. Thompson,* of Wichita, argued the cause, and *A. W. Hershberger, Richard Jones, H. E. Jones, Jerome E. Jones, Robert J. Roth* and *William R. Smith,* of Wichita, were with them on the briefs for the appellant.

*Paul A. Wolf,* of Hugoton, argued the cause, and *J. S. Brollier,* of Hugoton, was with him on the brief for the appellee.

The opinion of the court was delivered by

Wertz, J.: This was an action brought by plaintiff (appellant) D. O. Concannon, administrator of the estate of M. Z. Hall, Jr., a deceased farm laborer, against deceased's employer, Ross Taylor, defendant (appellee), for damages for personal injuries and wrongful death. The case was tried to a jury, which returned its general and special verdict in defendant's favor.

The facts in the instant case are not in dispute. The defendant is the only living eyewitness to the tragedy. The death of the employee resulted a few days after the occurrence of an explosion and fire. The plaintiff, in attempting to establish his case, used the defendant as his only witness about the facts surrounding the accident. The defendant testified, in substance, that about July 5, 1955, he employed Hall to work on his farm as a resident farm laborer at an

agreed monthly salary of $200, and to furnish him with a house, electricity, water, a milk cow and some chickens; that Hall's duties were general farm work, and that he continued with such duties until the date of his death. The defendant testified that he managed the operation of the farm; that he supervised and worked along with Hall; that Hall did what he was told to do and his work was very satisfactory; and that Hall exercised caution a reasonable, prudent farm laborer would exercise in performing his work up to the time of his death. Defendant further testified that Hall's duties included the prevention of pilferage or thievery in the farm buildings, and helping to take care of the cattle at all times, whether defendant was present or not; that Hall was to do anything there was to be done on a farm consisting of ten quarter sections; that defendant had no other help other than Hall; and that Hall was expected to lock up the buildings, including the roundtop building where the fire occurred, every night after he put away his car.

It was the further testimony of the defendant that he had no equipment using liquefied petroleum gas on the farm during the time Hall worked for him until just a short time before the accident. Defendant had previously used two self-propelled gasoline combines on his farm. One had become inoperative. To replace this combine defendant purchased from a neighbor a used combine that was equipped with liquefied petroleum gas fuel (hereinafter referred to as LP gas). Defendant had intended to change it over to gasoline, but had not done so. Defendant's neighbor loaned him an LP gas supply tank, and defendant and Hall loaded this tank onto Hall's pickup truck. The gas was used in the combine operated by Hall in the cutting of the maize crop.

The evidence disclosed that Hall had had previous experience in the use of LP gas; that he had driven combines and tractors using such gas while in the employ of other farmers; that he had told one farmer he knew how to handle it. The evidence further disclosed that the defendant had had no experience in the use of such gas.

On the date of the accident, December 2, 1958, defendant and Hall finished cutting the maize and took the two combines—one powered by gasoline and the other powered by LP gas—to the house, and about 5:25 p. m. the defendant and Hall were in the roundtop building on the farm. Hall's pickup truck, with the borrowed LP gas supply tank still loaded on it, was parked inside the roundtop building. A part of the floor of this building was concrete and the balance was dirt. Defendant had had trouble for years

with rats and rodents in the building. The rats had made six holes under the concrete floor to the right of the pickup truck. Defendant and Hall had previously used gasoline, oil and water in these holes in an attempt to rid the building of the rodents, and on this date, December 2, for the first time, they tried LP gas for this purpose. Defendant said, "This would be a good time to kill our rats. We got the butane tank right here." Located to the left of the pickup truck in the building, approximately thirty feet from the rat holes, was a natural gas stove that had been burning for several hours. Defendant told Hall, "We better turn the stove off because I heard that butane was real explosive, or dangerous." Hall turned off the gas burner. Defendant then took the hose from the LP gas supply tank and put some gas in each of the rat holes, beginning with the farthest one from the tank. As defendant put the gas in the holes Hall stomped dirt into each, as he had done when they had used gasoline to exterminate the rats. The operation was completed in five to ten minutes, and defendant then hung the hose back on the tank and left the building. As he was leaving he saw Hall get into the pickup truck, which was loaded with the LP gas tank, but said nothing to him. Defendant further testified that when he had reached a distance of about thirty or forty yards from the entrance to the building he heard Hall attempt to start the truck and at the same instant heard the explosion and "the whole front of the building went up like throwing a match into some gasoline." Hall was severely burned and injured, from which injuries he died forty-eight hours later; but immediately after the explosion and fire Hall assisted defendant in removing the pickup truck loaded with the LP gas tank from the building.

The expert testimony of a chemist revealed that LP gas is a mixture of butane and propane, both of which gases are heavier than air; that such gas is inflammable when it is mixed with oxygen and might be ignited by either heat or a spark; that contact with a hot metal surface or the spark from an electric motor might ignite such a mixture; that the principal uses of the gas are for heating, and fuel for engines; and that LP gas is not commonly used commercially as a fumigant.

At the close of all of the evidence the trial court overruled plaintiff's motion for an order to direct a verdict in plaintiff's favor on the issue of defendant's liability and to submit the case to the jury on the issue of damages only. The plaintiff requested the trial court to give certain requested instructions and objected to other

instructions given by the trial court. Also, plaintiff objected to certain special questions submitted by the trial court, all of which will be dealt with later.

The case was submitted to the jury, which returned a general verdict in favor of the defendant and answers to the following interrogatories submitted to it by the court: "1. What caused the gas in the round top building to explode? Answer: Attempting to start pickup. 2. Who had the most experience with the use of liquefied petroleum gas, Ross Taylor or M. Z. Hall, Jr.? Answer: M. Z. Hall, Jr. 3. Did M. Z. Hall, Jr., know the danger of using liquefied petroleum gas to the same or to a greater extent than Ross Taylor knew of such danger? Answer: Yes. 4. Did M. Z. Hall, Jr., make any objection to using liquefied petroleum gas to kill rodents? Answer: No. 5. Did Ross Taylor instruct M. Z. Hall, Jr., to do any additional work after they had finished using the gas to kill rodents? Answer: No. 6. Was Ross Taylor negligent in using liquefied petroleum gas to kill rats? Answer: Yes. 7. If your answer to Question 6 is yes, was that negligence a proximate cause of the injuries and damages sued for in this case? Answer: No. 8. Was Ross Taylor negligent in failing to warn M. Z. Hall, Jr., of the danger of explosion in the round top building after so using the gas? Answer: No."

From an order overruling his posttrial motions, plaintiff has appealed.

It is elementary that a duty rests upon the master not to expose the servant, in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care. It is also the master's duty to provide safe and suitable machinery, tools and implements to work with, with reasonable safe materials to work upon. (*Taylor v. Hostetler*, 186 Kan. 788, 796, 797, 352 P. 2d 1042; *Fishburn v. International Harvester Co.*, 157 Kan. 43, 45, 138 P. 2d 471.) In addition, it has also been held it is not only the duty of a master to provide for employees a safe place to work, and suitable tools, etc. with which to work, but that the employees may enter upon the discharge of their labor assuming these duties have been performed by the employer. (*Fishburn v. International Harvester Co.*, supra, pp. 45, 46.) It has also been decided that ordinary risks assumed by an employee are those only which occur after due performance by the master of those duties which the law imposes on him. (*Fishburn v. International Harvester Co.*, supra, p. 46.) Moreover, in this jurisdiction the servant,

in the contract of employment, assumes all of the ordinary risks of employment, and in the exercise of ordinary care he must foresee that the negligence of those with whom he works may result in injury to him. (*Taylor v. Hostetler*, supra.) It has also been held it is the duty of the master to warn his employee of the hazardous conditions.

In view of the mentioned rules, plaintiff contended that the trial court should have instructed the jury as a matter of law that the proximate cause of the injuries and death of Hall was the negligence of the defendant in injecting the LP gas into the rat holes under the floor of the building, and relied on *Finson v. City of Topeka*, 87 Kan. 87, 123 Pac. 723, to sustain his contention. In the *Finson* case the plaintiff brought an action for the wrongful death of her husband against his employer, the City of Topeka. Her husband was killed by an explosion of gas in a cistern where he was at work. The court held the city liable by reason of its negligence in not furnishing the employee a reasonably safe place in which to work. There was evidence tending to show that the immediate cause of the explosion was that another employee struck a match for the purpose of lighting a cigar. However, the court held as a matter of law that the proximate cause of the injury sustained in the explosion was the negligent act of permitting the gas to escape into and to remain in the cistern. In the opinion the court stated:

"Where gas of such highly inflammable character as to be liable to explode when brought into contact with fire is negligently allowed to escape into a confined place like a room or cistern, the proximate cause of its explosion is held to be the negligent act of permitting the gas to escape into and to remain in such a place. An explosion of subtle and dangerous gases when thus confined is regarded as the natural and probable consequence which might reasonably have been foreseen. This principle was recognized and followed in the recent case of *Luengene v. Power Co.*, 86 Kan. 866, 122 Pac. 1032, and it was held that the person injured could recover in an action against the gas company without producing evidence to show by what means the gas became ignited." (p. 92.)

The majority of the court is of the opinion that the *Finson* case is not applicable under the facts in the instant case. In that case the employee had no knowledge that there was any gas present in the cistern. In the instant case Hall was not only aware of the fact that LP gas was being used in the manner as heretofore related but also assisted in putting the gas into the holes. He had previously used LP gas on numerous occasions for several years, was familiar with its use, and had formerly told one witness that he

needed no explanation about how to use the gas. Moreover, the defendant told Hall prior to the use of the gas, "We better turn the stove off because I heard that butane was real explosive, or dangerous," and Hall himself extinguished the fire in the stove. Under such circumstances it cannot be said as a matter of law that the sole and proximate cause of the explosion and resultant death of Hall was the injection of the LP gas into the rat holes. We are of the opinion that the questions as to whether Hall assumed the risks incident to the employment and whether he was contributorily negligent under the circumstances were proper questions to be submitted to the jury. The question of proximate cause is almost always a question for the jury. (*Bateman v. Crum,* 186 Kan. 1, 348 P. 2d 639; *Applegate v. Home Oil Co.,* 182 Kan. 655, 662, 324 P. 2d 203.) In *State Farm Mutual Automobile Ins. Co. v. Cromwell,* 187 Kan. 573, 358 P. 2d 761, we stated that the question of negligence, including the determination of proximate cause, ordinarily rests in the province of the jury. The trial court did not err in overruling plaintiff's motion for an order directing a verdict in his favor on the issue of defendant's negligence and in not submitting to the jury the question of plaintiff's damages only.

Plaintiff predicates error on the trial court's giving instruction No. 6, which stated: "Where an employee has ceased working for an employer or under his direction and control and was acting outside of the scope of his employment or said employee was working for his own benefit then he cannot recover for injuries sustained," and at the same time objects to special question No. 5 before related. It may be stated that there was no evidence whatsoever to support the instruction nor to support the giving of special question No. 5. It is paradoxical to say that a resident farm laborer has working hours from 8:00 to 5:00 when the undisputed evidence in this case was that Hall was employed to work for $200 a month, that there were no set hours, and that his duties required twenty-four-hour vigil. However, this court is of the opinion that the giving of the instruction and the asking of the special question was not prejudicial error requiring a reversal.

Appellant next contends the trial court erred in submitting special questions Nos. 2 and 3 to the jury. A review of the record reveals that on several occasions Hall had stated he knew how to use LP gas and needed no instructions. The evidence went to the question of whether or not Hall knew of the danger involved in the use of

LP gas and whether or not he assumed the risk in using it. Under such circumstances we are of the opinion the two questions were not erroneously given.

We are of the opinion that the instructions given sufficiently covered the questions at issue and the substance of those requested by the defendant.

After a careful review of the entire record, the majority of the court is of the opinion that plaintiff has failed to make it clearly appear there was any prejudicial error that would justify a reversal of the judgment.

WERTZ, J. (dissenting): I cannot agree with the majority opinion that, under our rules, was assigned to me to write. I am of the opinion the rule stated in the case of *Finson v. City of Topeka*, 87 Kan. 87, 123 Pac. 723, should be applied here. The facts in this case and the facts in the *Finson* case are similar in that both cases involve a master's liability for injuries to his servant caused by the explosion of inflammable gas that had been negligently allowed to escape into a confined area. In the instant case the fumes from the LP gas accumulated in the roundtop building, and an explosion of this subtle and dangerous gas, when thus confined, should have been regarded and reasonably foreseen by defendant as a natural and probable consequence, and he should have anticipated the danger of its being set afire. The fire for which defendant should have been on guard or which he should have foreseen or anticipated need not have been the one set by the spark from the engine of the pickup truck. By his own testimony defendant admitted he was aware of the fact that butane was highly explosive and dangerous, and the undisputed evidence disclosed the principal uses of LP gas are for heating and fuel for engines, and that it is not used commercially as a fumigant.

The manner by which the gas becomes ignited is not material. We should apply the rule that where gas of a highly inflammable character that is liable to explode when brought into contact with fire is *negligently* allowed to escape into a confined place, the proximate cause of the explosion is the *negligent* act of permitting the gas to escape into and remain in such a place. (*Finson v. City of Topeka*, supra.) This rule imposes liability on a master who uses explosive gases for purposes other than those for which they are normally intended. Under this rule the negligence of the master would have to be shown. In the instant case the undisputed evi-

dence established defendant's negligence, and the jury so found.

The mentioned rule would not preclude the use of the affirmative defense of assumption of risk, since the assumption of risk doctrine ordinarily involves a matter of preliminary conduct in getting into a dangerous situation. A person is deemed to assume the risk of injury when he knows of the dangers involved in a certain course of action, has a full appreciation of the risks involved and then voluntarily exposes himself to the risk. (*Shufelberger v. Worden,* 189 Kan. 379, 369 P. 2d 382, and cases cited therein.) In the performance of the ordinary duties of a farm laborer Hall would have assumed the normal risk; however, the position in which he was placed in the extraordinary use of the LP gas by defendant did not fall within this category.

The jury found the defendant was negligent but that his negligence was not the proximate cause of Hall's injuries. I would apply the stricter liability rule of the *Finson* case, supra, and hold that once the defendant is found negligent in the use of the gas, his negligence was the proximate cause of the resulting injury.

I am of the opinion the court committed prejudicial error in giving instruction No. 6 and in submitting special question No. 5 over plaintiff's objection. There was no evidence to support instruction No. 6. In fact, the undisputed evidence was that Hall was a resident farm laborer with general duties and no set hours to work and his duties were subject to twenty-four-hour vigil. This instruction on the legal effect of an injury sustained after the employee has ceased working for his employer should not have been given. There was no evidence to support the answer to special question No. 5. I do not believe, in view of the answer to the special question submitted by the court, that the jury did not, in substance, base its verdict on the fact Hall had ceased work for the day and was on his own time when the explosion occurred.

Special questions Nos. 2 and 3 were erroneously submitted to the jury, and they were prejudicial in their effect. Question No. 2 asked, in essence, "Who had the most experience with the use of the gas, the defendant or Hall?" Question No. 3 asked, in essence, "Did Hall know of the danger of using this gas to the same or greater extent than the defendant?" The comparative experience or the comparative knowledge of the parties determines no issue in this lawsuit. If these questions were submitted to the jury in connection with the defendant's theory that Hall assumed the risk of

this injury, they were erroneous. It is not in every instance where one exposes himself to a known danger and injury results that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence under like circumstances would not subject himself to it. Mere knowledge of the danger of doing a certain act without full appreciation of the risks involved is not sufficient to preclude a plaintiff from recovery even though there may be added to the knowledge of danger a comprehension of some risk. (*Wainscott v. Carlson Construction Co.*, 179 Kan. 410, 295 P. 2d 649; *Shufelberger v. Worden*, supra.) Assumption of risk requires a determination of whether the servant knew of the danger, fully appreciated the risk involved and voluntarily chose to encounter the risk. All three of these elements must exist. (*Shufelberger v. Worden*, supra.) Questions Nos. 2 and 3 ask only for a comparison of knowledge and experience between Hall and the defendant. Assumption of risk does not have as an element these comparisons.

In view of the foregoing reasons, I am of the opinion the judgment of the trial court should be reversed and the cause remanded for a new trial.

Robb and Jackson, JJ., join in the foregoing dissenting opinion.