No. 46,940

CHERYL K. SMITH, *Appellee*, v. JAMES L. BLAKEY, Administrator, substituted for Dorothy I. Cropp, deceased, *Appellant*.

(515 P. 2d 1062)

Opinion filed November 3, 1973.

*Robert L. Howard,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Darrell L. Warta,* of the same firm, *James P. Mize,* of Clark, Mize, Linville & Miller, Chartered, of Salina, and *Robert L. Bates,* of Great Bend, were with him on the brief for the appellant.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: In this case the plaintiff-driver of an automobile sued the defendant-owner of the automobile for personal injuries

arising out of a one-car accident allegedly caused by failure of a defective tire. The case was tried to a jury and the plaintiff recovered a substantial verdict. On appeal, defendant presents eight points which we will consider in the order submitted in her brief, after we summarize the pertinent facts.

Plaintiff Cheryl K. Smith is and has been since the date of the accident a paraplegic confined to a wheelchair. Defendant Dorothy I. Cropp was the owner and also a passenger in the car at the time of the accident. At time of trial she was also confined to a wheelchair. She married since the date this suit was filed and her name became Dorothy Blakey. She is now deceased and her husband, James L. Blakey, as administrator of her estate, is substituted as defendant-appellant herein.

The accident which gave rise to this cause of action occurred April 13, 1969, on U. S. Highway 56, approximately one and three-fourths miles west of Lyons, Kansas. Plaintiff and defendant were friends as a result of having worked together at the same restaurant in Great Bend. Defendant lived in Hoisington and plaintiff lived in Great Bend. Evidence was submitted that the parties decided to go to Hutchinson in defendant's car. Defendant asked plaintiff to drive as was often the arrangement when they traveled together. There was evidence from both sides that plaintiff was very familiar with defendant's car and at one time plaintiff had commented to defendant that defendant's tires were in bad shape. She urged her to get better tires because defendant drove from Hoisington to Great Bend to work each day and it was dangerous to drive on the highway with smooth tires.

Plaintiff testified that on the morning of their trip to Hutchinson she asked defendant, "Is everything okay?", and defendant replied everything about the car was all right, but they would need to buy gas. It is plaintiff's contention throughout the trial that from defendant's reply she assumed the worn tires had been replaced. She had previously heard defendant ask a tire dealer to get her some tires and defendant's reply that everything was checked out except gas confirmed plaintiff's belief the tires had been purchased. Plaintiff admitted she did not look at the tires before she began driving and did not know they were the same tires she had previously told defendant were dangerous. Plaintiff testified that had she known the tires were those she had previously pointed out to be dangerous, she would not have ridden in defendant's car.

Plaintiff and defendant, with plaintiff driving, set out for Hutchinson. There was testimony from employees at two different gas stations as to their efforts to buy gas for the trip. The testimony conflicted and some witnesses gave testimony reversing prior statements as to the appearance and conduct of the parties on the morning of April 13, just prior to the accident. Some witnesses were convinced they had been drinking and had liquor in the car, and that they tried to buy beer as well as gasoline. Witnesses gave pretrial statements to that effect. Defendant's attorney contended throughout the trial that the accident occurred due to the intoxication and fatigued condition of plaintiff who was driving. Plaintiff admitted she had worked all night and until 3:00 a. m. of the day of the accident. There was testimony that plaintiff and defendant stopped at a gas station in Great Bend twice within thirty minutes, attempting to buy gas on credit, and beer. They stopped at another station in Ellinwood, Kansas, for two dollars worth of gas. The evidence of drinking and reckless or abandoned driving from these witnesses was conflicting and inconclusive. The parties proceeded toward Hutchinson and at about 11:00 a. m., on a deserted, straight stretch of dry concrete highway, plaintiff lost control of defendant's car and it skidded 250 feet, coming to rest on the opposite side of the highway against a utility pole. Both plaintiff and defendant testified they heard a noise before plaintiff lost control and assumed it was the sound of a blowout on the right front tire. Both plaintiff and defendant testified that though neither saw the tires after the accident they thought the failure of the right front tire was the cause of the loss of control. Testimony of the driver of the tow truck who saw the wrecked car immediately after the accident was to the effect that all tires on the car were inflated and supported the car as it was towed to the salvage yard.

The fact that defendant believed and asserted she was at fault in causing the accident, and the difficulty in defending her under these circumstances, resulted in an acrimonious trial.

## I.

Defendant asserts the trial court erred in permitting misconduct by plaintiff's counsel on repeated occasions, wherein he verbally abused and attacked defense counsel and interjected improper statements during examination of witnesses, thereby preventing a fair and impartial trial.

Under our system of government, courts are instituted for the purpose of enforcing rights and redressing wrongs according to law. In jury trials, evidence is adduced for the purpose of ascertaining the truth, and instructions prepared by the court are given to inform a jury as to the law applicable to the facts. Jurors should ascertain the facts from the evidence, apply the law given them to the facts as they find them, and return a verdict accordingly. Within these limits counsel may present his client's case in the light most favorable to him. Constant and repeated attacks on opposing counsel, deliberately inserted in a trial to humiliate, degrade, and demean him before a jury, thwart and offend the basic purposes of a jury trial. It is the duty of the trial court to prevent such attacks in furtherance of the objects of their creation and, if made, remove their wrongful effects as far as possible. Such actions should be restrained by the trial court without the necessity of objection by offended counsel.

We are conscious of the rights of litigants and that improper action of their counsel should not be charged against them unless such action results in basic unfairness. Basic unfairness must be determined in the first instance by the trial court. Its decision must rest on the exercise of judicial discretion. On appeal, we must determine whether the trial court abused its discretion. In order to perform this function we must examine the alleged prejudicial material and from its nature determine whether it is so inherently prejudicial that a fair trial could not have resulted.

From the opening statements through the final arguments the record in this case discloses plaintiff's counsel personally attacked the ethics and integrity of defense counsel. Specifically, plaintiff's counsel accused defense counsel of: (1) being in bad faith; (2) trying to impeach honest answers; (3) putting words in the mouths of witnesses; (4) playing "dirty pool;" (5) beating his client and other witnesses around; (6) "sandbagging" witnesses; (7) abusing witnesses; (8) being unethical; (9) impeaching and not properly representing his client; (10) being a lawyer who had previously been admonished by the court in chambers and who during the course of the trial was in contempt of court; and (11) being heartless. Many of these remarks were repeated throughout the trial. Plaintiff's counsel, when referring to the principal defense counsel, usually did so as the "man from Salina."

The following remarks are from plaintiff's counsel's closing argument:

"Notwithstanding the fact that in this Courtroom for the past three days you have witnessed an unprecedented assault by a lawyer against his own client attacking his client's credibility, trying to brand her as a liar, as concealing facts. . . ."

"What other tactics have they used in this case? The dirty, filthy insinuations they try to make through witnesses that have been sandbagged and approached and given half truths. . . ."

"If those statements in any way contradict the sworn testimony of the witness Mr. Gassoway or Mrs. Gassoway, you can rest assured they would have been up here showing the statements to the witnesses and reading them to you but that is not their way, their way is the dirty, filthy insinuations in trying to evade the responsibility against the interest of their own client in this particular case."

". . . I am not going to ask for a show of hands on how many of you would like to go on a search party with Mr. Mize for truth and think you will be successful but in your own mind just ask yourselves that question. For example, he made the statement about the lack of wealth of the defendant and he told you that she's not here this afternoon because she is ill. Of course, she came I think shortly after noon she became ill and was as a matter of fact she was vomiting in a little room with the door open there and I told Mr. Mize about it and he stayed in that seat and did nothing. Cheryl's mother had to help her. That is the way it is, ladies and gentlemen of the jury.

"He talks about sympathy. What a word to come from Mr. Mize . . . [N]ow when you go into a jury room you make your hearts as hard as the heart of Jim Mize from Salina, Kansas and scratch sympathy out of your mind. . . ."

Although the record is replete with offensive remarks by plaintiff's counsel, the foregoing are sufficient to allow us to consider the contention of defendant that they constitute reversible error. Defendant cites decisions holding many of the foregoing remarks to be individually reversible error. Many of these decisions are cited in an annotation appearing in 96 A. L. R. 2d 9. Conversely, courts have reviewed such remarks of counsel and, although concluding the remarks were improper, have stated reversible error was not shown.

We are cognizant of the rule that on appeal reversible error will not be considered when based on misconduct of counsel unless objection is made in trial court. (*State v. Ralls,* 213 Kan. 249, 515 P. 2d 1205; *State v. Fleury,* 203 Kan. 888, 457 P. 2d 44; *State v. McDermott,* 202 Kan. 399, 449 P. 2d 545, cert. den. 396 U. S. 912, 24 L. Ed. 2d 187, 90 S. Ct. 226.) We adhere to this rule; however, we point out that in the above cited cases the instances of impro-

priety were isolated and not of the nature disclosed by this record. It is apparent in this case that plaintiff's counsel's trial strategy was to try defendant's counsel rather than the issues. His efforts were not of an isolated nature but, to the contrary, permeated the whole of the trial from opening statement to final argument. The facts in this case are distinguishable from the facts in the cited cases, and in the interest of justice appellate review is permissible under the circumstances disclosed by this record.

Under what circumstances do remarks of counsel result in reversible error? An uncontradictable answer must be: they are reversible error when, because of them, the parties have not had a fair trial. Factors necessary to a fair trial are an adequate hearing before an impartial tribunal based on legally admissible evidence relevant to the issues involved, free from bias or prejudice. We are not concerned in this proceeding with discipline for violations of our Code of Professional Responsibility (Kansas Supreme Court Rule No. 501, 209 Kan. lxxiv), except as the actions which may constitute violations relate to the issue of a fair trial. After carefully reviewing this record, we have no hesitancy in finding the remarks and conduct of counsel materially distracted and hindered the jury from returning an impartial verdict based upon the issues between the parties and the evidence presented relevant to those issues.

## II.

Defendant claims the trial court erred in excluding deposition and trial testimony crucial to defendant's theory of the case. The trial court refused to permit the use of the deposition of Howard Aten, taken at his residence in Lyons, Kansas, February 13, 1970, at defendant's request pursuant to notice it was "to be used for discovery and as evidence." Plaintiff's counsel was present and fully exercised her right to cross-examine. On the first day of trial, the affidavit of Aten's physician was filed informing the court that witness Aten still resided at Lyons, but had suffered a disabling stroke which would make it impossible for him to testify at the trial. Mr. Aten owned the wrecker business which towed the wrecked automobile. His testimony was relevant to establish the condition of the right front tire of defendant's automobile and that it had not blown out nor was it "mushy" immediately following the accident. Aten testified in his deposition that the tires on Monday afternoon

following the accident on Sunday were up and appeared to be normally inflated. Plaintiff objected to introduction of the deposition on the theory defense counsel did not notify her of Aten's stroke. She also objected to the physician's affidavit, claiming plaintiff did not have an opportunity to verify Aten's current condition. Trial court excluded the deposition from evidence, stating it only corroborated the testimony of another witness (E. L. Clayton), and the affidavit was not timely made known to plaintiff. Defendant did not argue that Aten was a resident of another county which also qualified the deposition testimony for admission.

K. S. A. 60-226 (*d*) (3) (Am. effective January 1, 1973), provides:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (II) that the witness is outside of the county of the place of trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition; or (III) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; . . . ."

The statute provides no guidelines to the trial court as to the procedure to be employed or the basis for making the required finding. Generally, when this occurs the inherent power to exercise judicial discretion is employed. While the method of reaching a finding may be discretionary with the trial court, the right to use the deposition is controlled by the statute.

The trial court's reasons for refusing the use of the deposition are without merit. The statute does not require a party desiring to use a deposition to notify opposing party prior to trial that he intends to use the deposition. Absent such a statutory provision we must hold the requirement cannot be read into the statute under the guise of judicial discretion.

There are instances when the trial court may in the exercise of its discretion refuse to admit testimony which is cumulative. (*Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593.) Cumulative evidence is evidence of the same kind to the same point, and whether it is cumulative is to be determined from its kind and character, rather than its effect. (*Building Assn. v. McMullen,* 59 Kan. 493, 53 Pac. 481.) Cumulative evidence in itself is not objectionable. Error cannot be predicated on allowing the use of such evidence. In this case the condition of the right front tire of the Cropp car was the crucial issue. Aten's testimony covered this issue. The testimony of another witness who viewed the condition of the tire

at another time cannot be cumulative. The trial court should have admitted the Aten deposition.

### III.

Defendant next contends it was reversible error to exclude the testimony of Steve Mason concerning admissions by plaintiff immediately prior to the accident, disclosing her fatigue and/or intoxication, and his opinion concerning her condition based on those admissions and other observations. Mason, while working at the Park View Service Station in Great Bend, had an opportunity to observe plaintiff and defendant on two occasions just prior to the accident. The court restricted this witness's testimony as to certain conversations with plaintiff and defendant on the ground defendant's counsel was attempting to insert sex into the case, which the court had previously ruled would not be permitted. Defendant made a proffer that without this restriction Mason would have testified the occupants of the car informed him they had been partying all night at the Normandy Room at the Holiday Inn in Great Bend, and plaintiff invited him to go on a party with them. Despite the ruling of the court, on cross-examination of this witness plaintiff asked about partying at the Normandy Room. Further inquiry on redirect examination by defendant was denied by the trial court.

Regardless of the correctness of the court's ruling on direct examination, plaintiff waived any right to object to this testimony by referring to part of the conversation on cross-examination. (88 C. J. S. Trial, § 116, p. 236.)

### IV.

Defendant claims the court erred in improperly limiting defendant's examination of witness Glenn Gassoway by use of his prior inconsistent statement and in permitting plaintiff's counsel to interject improper statements during the course of said examination. Mr. Gassoway saw plaintiff and defendant at the Ellinwood station where they stopped for gas just prior to the accident and he made a written statement of his opinion that they were intoxicated and driving recklessly. His trial deposition was taken on the evening of the first day of trial in the Great Bend hospital by agreement of the parties with the court present. We glean from the briefs that the trial court limited the time for taking the testimony in deference to the witness's condition. The witness materially de-

parted from the reporter's statement he had previously made to defendant. Plaintiff's counsel continuously and repeatedly interrupted defendant's attempt to impeach the witness by use of his prior inconsistent statement. The trial court, in overruling a motion for a new trial based upon this issue, said:

". . . The Court did state and believes, rightly so, that a foundation needed to be laid for the introduction of such statements, and/or questioning of the witness relative thereto. This Court does not believe that the law is such that counsel can just whip out a statement of the witness and begin impeaching such witness with such statements without laying the customary foundation. This is even more applicable when such witness is the witness of the one who is trying to impeach him, and opposing counsel has not been furnished with a copy of such statement. . . ."

K. S. A. 60-422 does not contain any provision requiring a foundation be established to use an impeaching prior statement. The statute provides:

"As affecting the credibility of a witness (a) in examining the witness as to a statement made by him in writing inconsistent with any part of his testimony it shall not be necessary to show or read to him any part of the writing provided that if the judge deems it feasible the time and place of the writing and the name of the person addressed, if any, shall be indicated to the witness; (b) extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him an opportunity to identify, explain or deny the statement; . . ."

The record reveals the time and place of taking the prior statement and the name of the person addressed were disclosed. Taken as a whole, we are satisfied the court erred in unduly restricting defendant's impeachment of this witness.

## V.

Defendant next complains it was error to permit plaintiff to elicit opinion testimony and cross-examination statements from defendant which were highly prejudicial to her interests. The defendant, Dorothy Cropp, attended the trial in a wheelchair. The reason for her disability was not disclosed in the record, but it was shown that such disability was not related to the accident out of which plaintiff's claim arose. Plaintiff called defendant as her first witness, called attention to the similarity of their physical impairment, and used defendant's testimony about the seriousness of her condition to enhance plaintiff's recovery. The following testimony of defendant is shown in the record:

"Q. You are telling the Court and jury as far as you are concerned you are not contesting for one minute what she [plaintiff] asks for in this case because it is not enough?

"Mr. Mize: Objection to the Court for the leading and suggestive questions of counsel and highly improper.

"The Court: Sustained.

"Q. (By Mr. Turner.) Do you have an opinion as to whether or not 611,000 [dollars] is sufficient to adequately compensate Cheryl Smith for the injury she sustained in this case?

"Mr. Mize: Object, no proper foundation laid, she is not qualified.

"The Court: I will overrule it and let her answer.

"Q. (By Mr. Turner.) Go ahead and answer it, do you have an opinion?

"A. I guess it isn't."

A witness cannot give an opinion as to the amount plaintiff should recover since this is a question exclusively for the jury. (*Schaap v. Hayes*, 99 Kan. 36, 160 Pac. 977.) This testimony was improperly admitted.

## VI.

Defendant claims reversible error in permitting plaintiff's counsel to pursue improper prejudicial examination of witness E. L. Clayton on matters entirely collateral to issues in the case. Clayton drove the wrecker which removed the automobile from the accident scene and described the manner of towing the automobile as it related to the condition of the tires. Plaintiff was permitted to show that Clayton had been sued in several lawsuits in McPherson County, that one of the attorneys for defendant represented him, and had paid a substantial settlement on behalf of Clayton in one of those lawsuits. Bias or interest of witness can be shown in order for a jury to place the credence of such witness in proper perspective. The fact that Clayton was sued and that defendant's attorney represented him in other lawsuits we do not find objectionable. We do find objectionable extending the cross-examination to the fact that the attorney had been paid substantial sums on behalf of Clayton. As we view this testimony we deem it to have little value for impeachment purposes. Its effect on minds of the jurors could only result in an implication that Mr. Mize represented insurance companies and insurance companies pay out substantial sums of money. This court has frowned on the practice of using one means or another to suggest to the jury that a defendant is covered by liability insurance. (*Bott v. Wendler*, 203 Kan. 212, 453 P. 2d 100.) The trial court should not hesi-

tate to grant a new trial when insurance is improperly inserted into a lawsuit.

## VII.

Defendant claims the court erred in refusing to submit to the jury the issue of whether plaintiff assumed the risk of injury in using an automobile equipped with tires which plaintiff knew or should have known were defective. The record shows the court adequately instructed the jury on defendant's duty to plaintiff and on contributory negligence, the only issues of law raised by the evidence. Defendant concedes the doctrine of assumption of risk is generally confined to a master-servant relationship. We believe it should remain so confined. Its application to other relationships and acts of negligence results in confusion when an attempt is made to harmonize it with or differentiate it from contributory negligence. Some jurisdictions have abandoned assumption of risk altogether, even in employment situations, citing instead the employer's duty to its employee and the employee's contributory negligence as bases for determining liability. (*McGrath v. American Cyanamid Co.*, 41 N. J. 272, 196 A. 2d 238 [1963]; *Williamson v. Smith*, 83 N. M. 336, 491 P. 2d 1147 [1971]; 2 Harper and James, The Law of Torts, § 21.8, p. 1191.) We do not abandon the doctrine because its application is deeply imbedded in our master-servant case law (*Perry v. Schmitt*, 184 Kan. 758, 339 P. 2d 36; *Shufelberger v. Worden*, 189 Kan. 379, 369 P. 2d 382); but we refuse to broaden its application to other situations. This position is supported and cogently explained in *Felgner v. Anderson*, 375 Mich. 23, 133 N. W. 2d 136:

"Considering our conclusion that the doctrine of assumption of risk in this State properly is applicable only to cases in which an employment relationship exists between the parties, as well, perhaps, where there has been an express contractual assumption of risk, and considering the relative infrequency of such cases today, we need not go so far as did New Jersey's supreme court to eliminate the confusion and possible injustice resulting from the misuse of the assumption of risk doctrine and its language. Hereafter, when assumption of risk is used in cases between employee and employer for injuries incurred in the course of employment and where the statutory bar of the workmen's compensation act, *supra*, is not applicable and in cases where it is claimed there has been an express contractual assumption of risk, it should be made clear to the jury, if there is one, that the doctrine serves only the purpose of limiting the scope of a defendant's liability for injuries caused to the plaintiff and has no utility in barring recovery where defendant has been found to have negligently breached

a duty owed to plaintiff. Assumption of risk should not again be used in this State as a substitute for, or as a supplement to, or as a corollary of, contributory negligence; nor should it be used to explain a law violator's enlarged duty of due care resulting from his violation of law. The traditional concepts of contributory negligence are more than ample to present that affirmative defense to established negligent acts. . . . Language other than that of assumption of risk easily can be found to describe the enlarged scope of the duty of due care imposed upon one who voluntarily violates statutory or common-law standards of due care." (pp. 55, 56.)

The trial court's refusal to instruct the jury on assumption of risk as defendant requested was not error.

## VIII.

Defendant claims error in the trial court's refusing to set aside a jury verdict allegedly contaminated by the cumulative effect of the failure to make reasonable provision for reading testimony requested by the jury, improper consideration of plaintiff's attorneys' fees by the jury, and the use of the quotient method in arriving at the verdict. Defendant admits, standing alone, none of these contentions would constitute reversible error. It would add nothing to this opinion or to the law of this state to discuss the issues raised by defendant under these circumstances, particularly in view of the final result of this appeal.

We have considered each of the points raised by defendant and found several meritorious. Based on the foregoing discussion of Point I and Point II we conclude each constituted reversible error and a new trial should be ordered.

Reversed and remanded for a new trial.