NOT DESIGNATED FOR PUBLICATION

No. 118,490

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and
Treatment of KENNETH D. HEMBY, JR.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 15, 2018.
Affirmed.

*Mark Sevart*, of Derby, for appellant.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and STUTZMAN, S.J.

PER CURIAM: Kenneth D. Hemby Jr. appeals a jury finding he is a sexually violent predator subject to involuntary commitment. First, he claims the evidence submitted to support the finding was insufficient. Second, he complains the State unfairly cross-examined his expert psychologist and, thus, unfairly attacked his credibility. Third, Hemby asserts the statements made during the State's closing arguments unduly prejudiced him. Finally, he claims the cumulative effect of all the claims requires reversal. After reviewing the record, we find Hemby's complaints are unpersuasive and no error was committed during the trial. We affirm.

FACTS

The State filed a petition under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 et seq., alleging Hemby was a sexually violent predator. The district court

1

appointed Dr. Robert Barnett as an expert psychologist to evaluate Hemby. The matter proceeded to jury trial.

The district court took judicial notice of Hemby's convictions for rape and aggravated criminal sodomy in case No. 91CR434. Hemby acknowledged to the jury his convictions fully established the first element of a sexually violent predator finding.

Dr. Mitchell Flesher testified as an expert for the State. He testified he believed Hemby met the diagnostic criteria for antisocial personality disorder. Dr. Flesher based his opinion on Hemby's four or five prior convictions, three sexually violent acts, a pattern of substance abuse beginning in Hemby's teens, and an inability to follow rules and regulations. Dr. Flesher opined Hemby's personality disorder made him likely to commit repeat acts of sexual violence based on his history of violating the rights of others—both physically and sexually—and difficulty complying with the rules placed upon him. Dr. Flesher also opined Hemby had serious difficulty controlling his behavior.

C.J., the victim in case No. 91CR434, also testified. She explained how Hemby raped her, threatened to kill her as she struggled to get away, and tried to intimidate her in court. On cross-examination, C.J. indicated she wanted to be there because she was "protecting people." She also indicated she did not know anything about Hemby's mental health or any crimes he may have committed before or after 1991.

Dr. Derek Grimmell also testified as an expert witness for the State. Dr. Grimmell indicated an expert's opinion was suspect if the expert fell below the standard of care. He also testified Hemby suffered from antisocial personality disorder as well as two substance abuse disorders. Dr. Grimmell noted there was evidence of a conduct disorder prior to age 15 because Hemby was a full-fledged alcoholic by age 13 or 14, was truant, got into a lot of fights, and abused substances. He also testified Hemby's condition made

2

him more likely to commit sexually violent offenses and he had difficulty controlling his behavior.

During cross-examination, Dr. Grimmell explained Hemby was "not a shark looking for a victim, but if he gets into the wrong situation he lacks brakes." On redirect examination, Dr. Grimmell explained Hemby was more like another predator—a bear:

"He's more like a bear, seriously. As long as you're not getting near a bear's cubs and the bear isn't too terribly hungry, it will just ignore you. If you do either of those things, you become part of the food chain. So, yeah, bears act in heat, at least with respect to people."

Hemby testified he was an alcoholic and was powerless over alcohol. He admitted to drinking alcohol while on parole in 2006 despite knowing he was not supposed to and that he risked going to prison. He drank alcohol even though attending Alcoholics Anonymous was a condition of his parole. Hemby also acknowledged he drank alcohol while on parole in 2012 in violation of his conditions of parole.

Dr. Barnett testified in Hemby's defense. Dr. Barnett testified he had been a licensed psychologist in Kansas for approximately 29 years, had performed 35-45 sexually violent predator evaluations, and had previously testified as an expert approximately 30 times. Dr. Barnett explained he reviewed Dr. Flesher's and Dr. Grimmell's reports. Dr. Barnett indicated he did not believe the Static-99R—a test both Dr. Flesher and Dr. Grimmell performed—was reliable. Dr. Barnett testified Hemby was capable of controlling his behavior but noted that if Hemby drank alcohol again, "all bets . . . [were] off." Dr. Barnett also testified he did not believe possession of marijuana as a teenager supported a diagnosis for antisocial personality disorder. He was also unwilling to say truancy was an indicator of a conduct disorder without knowing how or why the individual was truant.

3

After questioning Dr. Barnett about whether he had ever been trained on using a Static-99R, the State asked Dr. Barnett if he had ever been licensed in another state or disciplined by any state licensing board. Dr. Barnett indicated he had received an ethical complaint while he was an intern in Ohio 32 years earlier for having a sexual relationship with a former client.

During closing arguments, the State repeatedly referred to Hemby as a "bear." The State also told the jury it had to prove it was "likely," not "more probable than not" or "guaranteed," that Hemby would commit additional acts of sexual violence. Finally, the State reminded the jury Hemby had admitted he was "powerless" over alcohol and asked the jury to "[n]otice how this argument tries to minimize his behavior."

The jury found Hemby was a sexually violent predator subject to involuntary commitment. Hemby appealed.

ANALYSIS

*The evidence was sufficient.*

Hemby contends the State presented insufficient evidence he was a sexually violent predator. Specifically, he argues the State failed to show he suffered from a mental abnormality or personality disorder.

> "When presented with an issue of whether evidence was sufficient to sustain the State's burden of proof in a sexually violent predator case, this court's standard of review asks whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a sexually violent predator. As an appellate court, we will not reweigh the evidence, pass on the

4

credibility of witnesses, or resolve conflicts in the evidence. [Citations omitted.]" *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

In order to establish an individual is a sexually violent predator, the State must prove four things:

"(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior." *In re Williams*, 292 Kan. at 106.

On appeal, Hemby challenges whether the evidence was sufficient to establish he suffers from a mental abnormality or personality disorder. He does not challenge the sufficiency of the evidence on the other three elements the jury used to find Hemby to be a sexually violent predator. The State's psychologists diagnosed Hemby with antisocial personality disorder. A diagnosis of antisocial personality disorder requires "evidence of a conduct disorder with onset before the age of 15." Hemby argues, "the evidence fails to show an onset of childhood Conduct Disorder as is required by the DSM-5 to support a diagnosis of Antisocial Personality Disorder" because the only offense in his juvenile record was for misdemeanor possession of marijuana.

Despite his contentions otherwise, there was sufficient evidence supporting this element of the sexually violent predator finding. Both Dr. Flesher and Dr. Gimmell testified the Diagnostic & Statistical Manual of Mental Disorders (DSM-5), p. 659 (5th ed. 2013), only requires *evidence* of a conduct disorder before age 15, *not the diagnosis* of a conduct disorder before age 15. Dr. Flesher indicated he believed Hemby's suspension for possession of marijuana as a seventh-grader was evidence of a conduct disorder prior to age 15. In addition, Dr. Grimmell testified Hemby's alcohol abuse, substance abuse, truancy, and adolescent fighting were evidence of a conduct disorder

5

prior to age 15. Even Dr. Barnett admitted that, although he would need to know more details about the incidents, adolescent juvenile delinquency could be serious rule violations sufficient to support evidence of a conduct disorder.

Hemby also tries to minimize and argue his diagnosis should be "nullified" because at the time of his offense he suffered from substance abuse and was under the influence. For support, he quotes the general criteria for a personality disorder and an antisocial personality disorder from summaries of the DSM-5, which state: "The impairments in personality functioning and the individual's personality trait expression are not solely due to the direct physiological effects of a substance (e.g, a drug of abuse, medication) or a general medical condition (e.g., severe head trauma)." See DSM-5, pp. 646-49 & pp. 659-66. However, no evidence presented suggests this provision of the DSM-5 applies. Further, nothing in Dr. Flesher's or Dr. Grimmell's testimony indicated their diagnoses were based solely on Hemby's rape conviction.

Viewed in the light most favorable to the State, the evidence supports the jury's sexually violent predator determination. There was sufficient evidence Hemby is a sexually violent predator and likely to reoffend.

*The State's cross-examination of Dr. Barnett did not deny Hemby a fair trial.*

Hemby next argues the State's cross-examination of Dr. Barnett denied him a fair trial when the State unfairly questioned Dr. Barnett's character and credibility.

An attorney's conduct may be the cause of reversal and remand for new trial, even in the absence of an objection, if it denies the respondent the right to a fair trial. *In re Care & Treatment of Ontiberos*, 45 Kan. App. 2d 235, 248, 247 P.3d 686 (2011), *aff'd* 295 Kan. 10, 287 P.3d 855 (2012). "'Factors necessary to a fair trial are an adequate hearing before an impartial tribunal *based on legally admissible evidence* relevant to the

issues involved, free from bias or prejudice.'" 45 Kan. App. 2d at 248 (quoting *Smith v. Blakely, Administrator*, 213 Kan. 91, 96, 515 P.2d 1062 [1973]). Prejudice to the respondent is the central consideration. *In re Ontiberos*, 45 Kan. App. 2d at 248.

Shortly into its cross-examination of Dr. Barnett, the State asked:

"Q. Doctor, you testified about your licensing status. Have you ever been licensed in another state other than Kansas?

"A. Not as a clinical psychologist, no.

"Q. Have you ever been disciplined by any state licensing board?

"A. Well, technically, no, but I was found in violation of an ethical—in an ethical complaint 32 years ago in Ohio. I wasn't disciplined because I wasn't licensed.

"Q. Okay. Were you denied a license by the state of Ohio?

"A. Yeah. But, again, technically I was denied the license because I failed the oral exam, not because of the ethical complaint.

"Q. And what was the basis of the ethical complaint?

. . . .

"A. Sure. I was disciplined—well, there was a disciplinary complaint because I had a relationship, sexual relationship, with a former client when I was an intern in Kansas."

Hemby argues the State's questioning of Dr. Barnett's character and credibility denied him a fair trial. He contends the State should have raised issues related to Dr. Barnett's credibility when Dr. Barnett was appointed as Hemby's independent examiner. Hemby seemingly argues the State "set the stage" to strip Dr. Barnett of his credibility by asking the State's own expert about ethical issues affecting the reliability of an opinion. Since Dr. Barnett was appointed by the court, Hemby argues: "[I]f the Trial Court has no problem with Dr. Barnett's qualifications, the State shouldn't either. . . . Allowing ethics qualification cross examination on a Court Appointed examiner adversely effects the Respondent who is left without an expert and therefore left without a fair trial."

7

Hemby's argument is unpersuasive. He was not denied the right to an expert witness. Dr. Barnett conducted a psychological evaluation of Hemby, prepared an expert report, and testified. Dr. Barnett told the jury he had been a licensed psychologist for 29 years, had performed 35-45 sexually violent predator evaluations, and had previously testified as an expert approximately 30 times. He explained to the jury why he believed Hemby could not properly be diagnosed with antisocial personality disorder. Dr. Barnett testified he did not believe possession of marijuana in middle school or truancy was indicative of a conduct disorder before age 15.

Furthermore, the State's witnesses never testified an ethical issue made an expert's subsequent opinion unreliable. Hemby seemingly refers to this exchange between the State and Dr. Grimmell related to a psychologist's standard of care:

"Q. Doctor, we left off in questioning about meeting the standard required of a psychologist. What does it mean to practice psychology beneath the standard required by the profession?

"A. What it ultimately means is that you risk discipline against your license if you practice below the standards. Standards of care are something in medicine. They're in psychology. They're in social work. They define the minimum that your client is entitled to expect you to do. And if you go below that, there is a chance that a licensing board may issue a letter of reprimand or insist you undergo training or supervision or they may suspend or revoke your license.

"Q. Does it make your opinions that you have prepared and formulated suspect if you're beneath the standard?

"A. Yes, it does. We establish the standards because it's the best known way to practice. So that's common to medicine, psychology, all of the health care fields."

Dr. Grimmell did not testify an ethical issue makes an expert opinion unreliable; he testified that falling below the standard of care makes an opinion suspect. No one testified Dr. Barnett's level of care was below the standard of care. Hemby was not

denied the right to an expert witness on his behalf. The State's questioning of Dr. Barnett did not unfairly prejudice Hemby or deny him the right to a fair trial.

However, although the questioning was within acceptable standards, the need to expose the jury to Dr. Barnett's ethical complaint of 29 years ago was questionable. Although marginally relevant and admissible, it had little-to-no value for the jury to consider when it evaluated Dr. Barnett's testimony.

*No errors committed during closing argument.*

Hemby also contends the State committed errors during closing argument that denied him the right to a fair trial. Specifically, he asserts the State denied him a fair trial in five different ways: by suggesting Dr. Barnett's ethical issues in Ohio made him unbelievable; allowing C.J. to testify she was there to "protect people"; referring to Hemby as a "bear"; lowering the State's burden of proof; and by arguing Hemby was "powerless over alcohol."

An attorney's conduct may be the cause of reversal and remand for new trial, even in the absence of an objection, if it denies the respondent the right to a fair trial. *In re Ontiberos*, 45 Kan. App. 2d at 248. "'Factors necessary to a fair trial are an adequate hearing before an impartial tribunal *based on legally admissible evidence* relevant to the issues involved, free from bias or prejudice.'" 45 Kan. App. 2d at 248 (quoting *Smith*, 213 Kan. at 96). Prejudice to the respondent is the central consideration. *In re Ontiberos*, 45 Kan. App. 2d at 248.

*Commenting on Dr. Barnett's Ethical Issues*

In arguing the State denied him a fair trial during closing arguments, Hemby asserts: "The prosecutor tried to suggest Dr. Barnett had issues in Ohio thereby making

9

him questionable and unbelievable." He does not expand on this argument. However, the State did not mention Dr. Barnett's Ohio ethical complaint during closing argument. It is unclear how Hemby believes the State improperly commented on Dr. Barnett's credibility considering the State did not comment at all on Dr. Barnett's credibility during its closing argument.

*C.J.'s "protecting people" Comment*

Hemby seemingly argues the State prejudiced him during closing arguments when it referred to C.J.'s testimony that she wanted to be there because she was "protecting people." However, the State did not reference this portion of C.J.'s testimony during its initial closing argument. During his closing argument, Hemby questioned the State's decision to call C.J. as a witness:

> "Now, they called [C.J.]. Why? To prove the offense? They had the reading of the offense. Oh, we went over what happened, what happened, what did Mr. Hemby say happened, what did [C.J.] say happened. Why do you think the State called her? To prove the element? They needed her to prove the element?
> "They wanted her to tell that story in person. Like for every emotional person in the world, that was not a pleasant story to hear, but it was to evoke sympathy and emotion and not about the elements that the State has to prove."

During rebuttal, the State instructed the jury it could not use sympathy to decide the case. Without referencing C.J.'s "protecting people" comment, the State explained C.J.'s testimony was evidence Hemby had difficulty controlling his dangerous behavior. While the State referenced C.J.'s testimony throughout its closing argument, it never mentioned the "protecting people" comment Hemby now complains of on appeal.

10

*Hemby is a "bear" Reference*

Hemby also complains the State referred to him as a "bear." During closing argument, the State explained to the jury:

"Mr. Hemby is a bear, as Dr. Grimmell described him. He's not a shark. He's not a teddy bear by any means, but he is an antisocial personality disordered bear. And when the bear encounters trouble, the bear attacks. The antisocial personality disordered bear may not go out looking for trouble the way a shark does. He's not that kind of predator. But his history in the community is that when trouble comes his way, he is powerless to handle it."

The State's arguments during closing are similar to the way Dr. Grimmell described Hemby during the trial. On cross-examination by Hemby's attorney, Dr. Grimmell stated Hemby was "not a shark looking for a victim." Later, Dr. Grimmell explained, "[H]e isn't a shark, because he isn't a serial attacker, he's an opportunistic attacker." On redirect examination, the State asked: "So you use the example he's not a shark but he's some other kind of predator?" Dr. Grimmell replied:

"He's more like a bear, seriously. As long as you're not getting near a bear's cubs and the bear isn't too terribly hungry, it will just ignore you. If you do either of those things, you become part of the food chain. So, yeah, bears act in heat, at least with respect to people."

In this context, the State was not "name-calling" when it referred to Hemby as a bear. Instead, it was an accurate restatement of the evidence and a fair comment on the evidence during its closing argument. Hemby suffered no unfair prejudice when the State referred to him as a bear.

11

*Lowering the Burden of Proof*

Hemby complains the State tried to lower its burden of proof when it informed the jury: "Mr. Hemby's personality disorder makes him likely—please note that the word is likely. It is not more probable than not. It is not guaranteed. It is not absolutely but likely that Mr. Hemby will engage in repeat acts of sexual violence." However, this truncates the State's argument. In discussing the third element of a sexually violent predator finding—the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder—the State explained:

> "The third claim the State has made is whether the personality disorder—is that Mr. Hemby's personality disorder makes him likely—please note that the word is likely. It is not more probable than not. It is not guaranteed. It is not absolutely but likely that Mr. Hemby will engage in repeat acts of sexual violence. We've already talked about the fact that in just his risk of repeating acts of sexual violence he is a higher risk because he's committed three acts of sexual violence in the past. Please note that the State does not have to show that he will commit or be charged or convicted in the future, just, again, that he is likely to engage in repeat acts of sexual violence."

In context, the State was merely reiterating to the jury that it did not have to prove Hemby *would* commit another act of sexual violence, merely that he was *likely* to commit another act of sexual violence. Furthermore, during his closing argument, Hemby misstated the State's burden of proof was beyond a reasonable doubt. The State was not attempting to lower its burden of proof, it was clarifying for the jury the correct standard to use as reflected in the jury instructions.

*"Powerless" Over Alcohol*

In Hemby's final complaint against the State's closing argument, he claims the State also unfairly prejudiced him when it reminded the jury: "He describes his inability

12

to control his drinking as powerless to control alcohol, powerless. Mr. Hemby's own words, I am powerless. He himself testified I am powerless over alcohol." In rebuttal, the State continued:

> "He drank. He admitted that he drank. He admitted he looked at porn. He said both those things were bad. He said that he was powerless to control his relationship with alcohol.
> "Notice how this argument tries to minimize his behavior. Notice how he is trying to excuse his conduct and his violations of parole and his conduct. . . . He even couches it in terms of he was violated and rolled back to prison. He doesn't say I violated parole. He says I was violated."

Hemby testified he was an alcoholic and was powerless over alcohol. He testified he drank alcohol while on parole in 2006 despite knowing he was not supposed to and by doing so he risked going back to prison. He drank alcohol even though attending Alcoholics Anonymous was a condition of his parole. Hemby also acknowledged he drank alcohol while on parole in 2012. The State's closing arguments accurately reflected Hemby's trial testimony. He was not prejudiced or denied a fair trial when the State told the jury Hemby was powerless over alcohol.

*Cumulative Error*

Hemby briefly argues "[t]he totality of the arguments affected Mr. Hemby's substantial rights and denied him his right to a fair trial." None of Hemby's alleged errors were actually erroneous. The court will find no cumulative error when the record fails to support the errors the respondent raises on appeal. See *State v. Marshall,* 303 Kan. 438, 451, 362 P.3d 587 (2015).

Affirmed.

13